Jeffrey D. BOGGS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 40A01–0907–CR–346.

Court of Appeals of Indiana.

June 15, 2010.

Transfer Denied Aug. 4, 2010.

R. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Jeffrey D. Boggs was convicted after a jury trial of attempted dealing in methamphetamine[1] as a Class B felony, two counts of possession of a precursor while in possession of a firearm,[2] each as a Class C felony, possession of methamphetamine[3] as a Class D felony, and possession of marijuana[4] as a Class A misdemeanor, and was found to be a habitual offender.[5] He was sentenced to a fifteen-year aggregate sentence for the underlying convictions with a twenty-five year enhancement for the habitual offender determination for a total sentence of forty years. Boggs appeals, raising the following restated issues:

I. Whether the trial court abused its discretion in admitting evidence obtained pursuant to a search warrant that was based upon information discovered during an unconstitutional and warrantless search of his vehicle;

II. Whether sufficient evidence was presented at trial to convict him where the State did not present scientific or expert evidence to identify the allegedly illegal substances;

III. Whether sufficient evidence was presented to support his habitual offender determination because the State failed to prove that he had two prior unrelated felony convictions, specifically because a prior federal conviction contained no notation that it was for a felony; and

IV. Whether his aggregate forty-year sentence was inappropriate in light of the nature of the offense and the character of the offender.

We affirm and remand.

## FACTS AND PROCEDURAL HISTORY[6]

On February 11, 2006, sometime after midnight, Detective David Turner of the

---

1. *See* Ind.Code §§ 35–48–4–1; 35–41–5–1.

2. *See* Ind.Code § 35–48–4–14.5(b).

3. *See* Ind.Code § 35–48–4–6.

4. *See* Ind.Code § 35–48–4–11.

5. *See* Ind.Code § 35–50–2–8.

6. On April 14, 2010, we held oral argument in this matter at Floyd Central High School in Floyds Knobs, Indiana. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, participating in post-argument discussions with the audience, and for commuting to the oral argument. We especially thank Floyd Central High School for their accommodations and

Jennings County Sheriff's Department stopped a vehicle driven by Jessica Driver and arrested her on an outstanding warrant. At the time she was pulled over, Driver had Boggs's minor daughter with her. Although a call by dispatch to Boggs's home had gone unanswered, Deputy Eric Pettit, along with other officers, drove to Boggs's residence in order to determine if he was there and could pick up his daughter. While en route to Boggs's residence, Deputy Pettit was informed by dispatch that there was an outstanding warrant out of Ohio for Boggs's arrest.

Upon arrival, Deputy Pettit parked his police vehicle in Boggs's driveway, walked to the front door, and knocked but received no answer. As he was returning to his vehicle, Deputy Pettit walked past Boggs's Ford Bronco ("Bronco"), which was parked in the driveway. Deputy Pettit shined his flashlight into the interior of the Bronco in order to determine if anyone was inside because he knew that Boggs drove the Bronco. *Tr.* at 246, 342–43. When he looked inside the Bronco, Deputy Pettit observed a small propane tank with one end protruding out of a green duffle bag. The end contained the tank fittings, which appeared to be altered from their original state and had a blue/green tint to them. Based upon his experience, Deputy Pettit knew that tanks with altered fittings were often used to steal anhydrous ammonia to manufacture methamphetamine. *Id.* at 250. Boggs then arrived at his residence, was arrested on the outstanding warrant, and was transported to jail.

Deputy Pettit left to obtain a search warrant for Boggs's residence and property. The basis for the search warrant was not only the observation of the tank inside the Bronco, but also that Deputy Pettit had previously been involved with two other investigations where Boggs was suspected of manufacturing methamphetamine and that police had found digital scales and empty pseudoephedrine blister packs at the earlier traffic stop of a vehicle registered to Boggs and driven by Driver. *State's Ex.* 1, Hrg. 4–23–07.[7] A search warrant was signed by a judge and executed by police at Boggs's residence.

Among the items found as a result of the search were several receipts for decongestants and cold medicine, bolt cutters, aquarium air line tubing, red high pressure hose, an oxygen tank, a small propane tank with altered fittings, several cans of solvent, coffee filters, burnt aerosol cans, numerous empty burnt pseudoephedrine blister packs, several burnt lithium battery strips and casings, a breathing mask, a plastic bottle containing pink powder, a cigar box containing 252 pills found inside the dryer, two blenders with white powder residue, aluminum foil "boats"[8] with burnt residue, a hollowed-out light bulb with burnt residue, numerous empty decongestant and cold medicine boxes, a plate containing white powder residue, a casino card containing white residue, small bags of marijuana, a box of empty cigarette tubes, and a twelve-gauge shotgun. *Tr.* at 259–78, 400–10.

---

the audience members for their thoughtful post-argument questions.

**7.** We note that the exhibit volume contains exhibits from both of the suppression hearings as well as the jury trial. The exhibits from the suppression hearings are labeled by the date of the hearing. For ease of locating the cited exhibit, we cite to them by referring to the date of the hearing as the parties have done.

**8.** Aluminum boats are pieces of aluminum foil folded into a v-shape. *Tr.* at 410–11. Methamphetamine is generally placed in the middle and heated underneath to create smoke to inhale. *Id.* at 411. Hollowed-out light bulbs are used in a similar way. *Id.*

Boggs signed a waiver of rights and was interviewed at the jail. He admitted that he used one of the blenders to crush pills and that the pink substance in the plastic bottle was crushed pills. *Id.* at 307. He also admitted that the shotgun and tanks found at his house belonged to him and that he cooked methamphetamine. *Id.* at 301, 310–11, 328. He stated that he had not purchased decongestant pills in awhile, but had others do it for him and that he had others steal anhydrous ammonia for him. *Id.* at 307, 315. Boggs also told the officers that he usually produced between thirty-five and forty grams of methamphetamine each time he cooked and that he tried to do 400 pills at a time if possible. *Id.* at 317. He admitted that he was preparing to cook the 252 pills found in the box inside of the dryer. *Id.* at 321. He stated that he mainly cooked methamphetamine for his own use, but would sometimes sell it for $100 per gram. *Id.* at 327. He also admitted that the cigarette tubes recovered during the search were used for marijuana. *Id.* at 329.

On February 15, 2006, the State charged Boggs with attempted dealing in methamphetamine as a Class B felony, two counts of possession of a precursor while in possession of a firearm, each as a Class C felony, possession of methamphetamine as a Class D felony, and possession of marijuana as a Class A misdemeanor. On January 29, 2008, the State filed a motion to amend the information to add a habitual offender enhancement, which the trial court granted. Prior to trial, Boggs filed two motions to suppress, attempting to suppress the evidence discovered at his residence. The trial court denied both motions.

On April 6, 2009, a bifurcated jury trial began, at the conclusion of which, Boggs was found guilty of all the charges and found to be a habitual offender. The trial court sentenced him to fifteen years for the Class B felony attempted dealing in methamphetamine conviction, six years each for the Class C felony possession of precursor convictions, two years for the Class D felony possession of methamphetamine conviction, and one year for the Class A misdemeanor conviction, all to run concurrently to each other. The trial court also sentenced Boggs to twenty-five years for the habitual offender enhancement with the sentence to run consecutively to the other sentences for an aggregate sentence of forty years. Boggs now appeals.

## DISCUSSION AND DECISION

### I. Admission of Evidence

The admission of evidence is within the sound discretion of the trial court, and we will reverse only on a showing of abuse of discretion. *McClendon v. State,* 910 N.E.2d 826, 832 (Ind.Ct.App. 2009), *trans. denied; Goldsberry v. State,* 821 N.E.2d 447, 453–54 (Ind.Ct.App.2005). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *McClendon,* 910 N.E.2d at 832; *Goldsberry,* 821 N.E.2d at 454.

Boggs argues that all of the evidence obtained pursuant to the search warrant should have been excluded because the warrant was based on Deputy Pettit's observation of the tank inside of the Bronco, which was an unconstitutional search of the vehicle parked in his driveway. He contends that he had an expectation of privacy in his residence and the curtilage surrounding it, which included the driveway and the Bronco parked upon it. Boggs also claims that Deputy Pettit had no legitimate reason for investigating the Bronco because the officer's stated purpose for being at Boggs's residence

was to see if Boggs was home so he could pick up his daughter and a previous unanswered call to Boggs had shown that he was not home. Further, even if Deputy Pettit's stated reason for going to Boggs's home was genuine, Boggs asserts that, as soon as the officer knocked on the door and received no answer, he was required to leave the property immediately and seek a warrant if he wanted to investigate any further. Therefore, Boggs contends that Deputy Pettit's observation of the tank was a violation of his Fourth Amendment rights and, because this observation was the sole basis for the search warrant, all evidence seized pursuant to such warrant should not have been admitted into evidence at his trial.[9]

The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Matson v. State*, 844 N.E.2d 566, 570 (Ind. Ct.App.2006), *trans. denied*. Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind.2005). When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. *Id.*

Under the Fourth Amendment, our analysis focuses on whether a person has a constitutionally protected reasonable expectation of privacy. *Divello v. State*, 782 N.E.2d 433, 436 (Ind.Ct.App.2003) (citations omitted), *trans. denied*. "Therefore, whether Fourth Amendment protections should be applied embraces a two-part inquiry: (1) whether a person has 'exhibited an actual (subjective) expectation of privacy;' and (2) whether 'the expectation [is] one that society is prepared to recognize as reasonable.'" *Holder v. State*, 847 N.E.2d 930, 936 (Ind.2006) (quoting *Katz v. U.S*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967)). A man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the plain view of outsiders are not protected because no intention to keep them to himself has been exhibited. *Id.*

The land immediately surrounding and associated with a home, the curtilage, is also subject to the Fourth Amendment protections that attach to the home. *Holder*, 847 N.E.2d at 936. "When police enter onto private property in order to conduct an investigation or for another legitimate purpose and restrict their entry to places that other visitors would be expected to go, such as walkways, driveways, or porches, any observation made from these areas is permissible under the United States Constitution and the Fourth Amendment thereto." *Divello*, 782 N.E.2d at 437 (citing *Shultz v. State*, 742 N.E.2d 961, 964 (Ind.Ct.App.2001), *trans. denied* ). "[S]imple observations by officers standing

---

9. Boggs also argues that Deputy Pettit's observation of the tank inside the Bronco was a violation of Article I, section 11 of the Indiana Constitution and therefore constituted an unconstitutional search. We note that, although Boggs frames his argument as being under Article I, section 11 of the Indiana Constitution, both of the cases that he discusses and distinguishes from the present case were decided under the Fourth Amendment. Therefore, neither of the cases supports an argument under the Indiana Constitution. Further, he presents no additional arguments under Article I, section 11. It is well settled that we will not consider an appellant's assertion on appeal when he has not presented cogent argument supported by authority and references to the record as required by the rules. *Davis v. State*, 907 N.E.2d 1043, 1048 n. 10 (Ind.Ct.App.2009). Therefore, Boggs's argument under the Indiana Constitution has been waived.

in a place where they have a right to be are not searches in the constitutional sense." *Pavey v. State*, 477 N.E.2d 957, 960 (Ind.Ct.App.1985). The use of a flashlight does not transform an officer's observations into a search. *Avant v. State*, 528 N.E.2d 74, 76 (Ind.1988); *Rook v. State*, 679 N.E.2d 997, 1000 (Ind.Ct.App.1997).

▆▆ Here, Deputy Pettit initially went to Boggs's residence in order to ascertain if Boggs was home so that he could come get his daughter from the scene of the traffic stop. On the way to Boggs's house, Deputy Pettit was informed that Boggs had an outstanding warrant for his arrest from Ohio. Therefore, the officer had a legitimate reason for entering onto Boggs's property, and even after he received no answer at the door of Boggs's residence, Deputy Pettit still had a legitimate reason for locating Boggs as there was a warrant for his arrest.

On his way back to his car, Deputy Pettit shined his flashlight into the Bronco, testifying that he did so because he was looking for Boggs who was not in the house and the officer knew that Boggs drove the Bronco. *Tr.* at 342–43. Because Deputy Pettit restricted his movement to places where visitors might be expected to go and never left the normal routes of ingress and egress, this observation inside the Bronco was not an illegal search and did not violate the Fourth Amendment. *See Divello*, 782 N.E.2d at 437. Additionally, Deputy Pettit did not have to move or manipulate anything in order to observe the tank in the backseat area of the Bronco, and the use of the flashlight did not transform the officer's observation into a search. Therefore, because Deputy Pettit was on Boggs's property for legitimate purposes, because he did not stray from the places a visitor might go, and because he did not move or manipulate anything in order to make his observation, we conclude that the officer's observation of the tank inside of the Bronco did not violate the Fourth Amendment, and the trial court did not abuse its discretion in admitting the evidence seized pursuant to the search warrant.

## II. Sufficiency of Evidence

▆▆ Our standard of reviewing claims of sufficiency of the evidence is well settled. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Mork v. State*, 912 N.E.2d 408, 411 (Ind.Ct.App.2009) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). We do not reweigh the evidence or assess witness credibility. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* A conviction may be based upon circumstantial evidence alone. *Bockler v. State*, 908 N.E.2d 342, 346 (Ind.Ct.App.2009).

Boggs contends that the State presented insufficient evidence to support his convictions for all of the underlying offenses because they were all offenses that required the identity of certain substances, and the State did not present any direct evidence of the chemical makeup or identification of the substances as they were not tested by the Indiana State Police Laboratory. Our Supreme Court has clearly addressed this issue. In *Clifton v. State*, 499 N.E.2d 256, 258 (Ind.1986), the Court held, "[T]he identity of a drug can be proven by circumstantial evidence." In *Vasquez, v. State*, 741 N.E.2d 1214, 1216–17 (Ind.2001), the Court held that "The opinion of some-

one sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence," but noted that "chemical analysis is one way, and perhaps the best way, to establish the identity of a compound."

Here, Boggs sets out his arguments as follows. First, he argues that the State did not present sufficient evidence to prove that the 252 pills discovered inside a cigar box in the dryer and the pink powder found in a clear plastic bottle were pseudoephedrine. Second, he asserts that the State did not present sufficient evidence to prove the presence of more than ten grams of pseudoephedrine, which was required to convict him of Count II. Third, Boggs argues that the State failed to present sufficient evidence that the substance in the tank discovered at his residence was anhydrous ammonia. Fourth, he asserts that no evidence was admitted to prove that the white powder found on a plate and casino card in his residence was methamphetamine. Fifth, and finally, he contends that, since no testing was done to prove that the green, leafy substance found in his house was marijuana, insufficient evidence was presented to support his conviction for possession of marijuana.

 For offenses involving controlled substances, the State is not required to introduce the subject contraband to obtain a conviction for dealing or possession. *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind.2009). "The identity and quantity of a controlled substance, and the defendant's possession of or dealing in narcotics, may all be established through witness testimony and circumstantial evidence." *Id.* As previously stated, the opinion of someone sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence. *Vasquez,*

741 N.E.2d at 1216 (citing *Clifton,* 499 N.E.2d at 258).

 At the trial, Deputy Pettit, Detective Turner, and Indiana State Trooper Martin Meade ("Trooper Meade") all testified about the various items and substances found on Boggs's property pursuant to the search warrant. Deputy Pettit, who at the time of Boggs's arrest had been working for the Jennings County Sheriff's Department for three-and-a-half years, had worked approximately forty or fifty methamphetamine lab cases, and had received specialized training regarding how methamphetamine is manufactured. *Tr.* at 238–39. Trooper Meade worked in the methamphetamine suppression section with the Indiana State Police, which specialized in dismantling methamphetamine labs and other duties related to the drug. *Id.* at 384–85. He had specialized training in methamphetamine labs and the manufacture of the drug and had worked over 400 cases involving these labs. *Id.* at 386, 451. Detective Turner was clandestine lab certified and had worked over 300 cases involving methamphetamine. *Id.* at 494–95. Therefore, the testimony of these officers could establish the identity and quantity of the substances at trial because the officers were sufficiently experienced with methamphetamine and the substances involved in the manufacturing of the drug.

 With respect to proving that Boggs possessed pseudoephedrine and anhydrous ammonia in order to support a conviction for attempted dealing in methamphetamine, evidence was presented of various items found on Boggs's property, including receipts and many empty boxes and blister packs for decongestants, as well as tanks with characteristics consistent with stealing anhydrous ammonia. A photograph of the boxes introduced showed that the decongestants contained

pseudoephedrine hydrochloride.[10] Additionally, the evidence showed that a box containing 252 pills was found, which Deputy Pettit identified as various types of decongestant pills.[11] *Id.* at 276. Detective Turner testified that some of the pills contained the marking "L054," which appears on the Equate brand of decongestant; several boxes recovered during the search were the Equate brand. *Id.* at 535; *State's Exs.* 1, 29. Further, Boggs admitted that he had used his blender to crush pills, he had others purchase decongestant pills for him, and the 252 pills found, which he was preparing to cook, belonged to him. *Tr.* at 307, 315–17, 321; *State's Ex.* 53. This was sufficient evidence to prove that Boggs possessed pseudoephedrine.

As for the possession of anhydrous ammonia, both Trooper Meade and Deputy Pettit testified that it is a liquid that becomes a gas and forms a white cloud when it is exposed to air and that it has a distinct odor. *Tr.* at 333–34, 394. Deputy Pettit shot the tank found in Boggs's Bronco in order to destroy it[12], and when he did so, both he and Detective Turner observed a white cloud and smelled the distinct odor consistent with anhydrous ammonia. *Id.* at 335, 505. Deputy Pettit also testified that the fittings on the tank had a blue/green discoloration, which he said was consistent with coming in contact with anhydrous ammonia. *Id.* at 248, 357.

Additionally, Boggs admitted that he had paid someone to steal anhydrous ammonia for him. *Id.* at 321. As previously stated, the opinion of someone sufficiently experienced with a compound may establish its identity, along with other circumstantial evidence, and therefore, the officers' testimony was sufficient to show that Boggs possessed anhydrous ammonia. *See Vasquez*, 741 N.E.2d at 1216.

As to the sufficiency of the evidence showing the weight of pseudoephedrine found, the State presented evidence that 252 pills containing pseudoephedrine were found at Boggs's residence and that each pill contained 120 milligrams of pseudoephedrine as shown on the boxes recovered. The weight of controlled substances may be proven by either evidence of its actual, measured weight or by demonstrating that the quantity is so large as to permit a reasonable inference that the element of weight has been established. *Halsema*, 823 N.E.2d at 674. We conclude that a reasonable inference could be made that the element of weight was established based on the fact that 252 pills were found at Boggs's residence and each contained 120 milligrams of pseudoephedrine, which would equal approximately 30.25 grams.

As to the evidence of methamphetamine, testimony was presented by

10. Pseudoephedrine hydrochloride is a naturally occurring isomer of ephedrine, and the isomers of ephedrine and pseudoephedrine are equally prohibited substances statutorily. *Reemer v. State*, 835 N.E.2d 1005, 1010 (Ind. 2005). At trial, the State asked the trial court to take judicial notice of this fact, and the trial court told the jury that it could take judicial notice of such. *Tr.* at 418, 425–26.

11. Boggs contends that he objected to this evidence at trial based on lack of foundation. However, that does not seem to be the objection raised during the trial. Boggs objected to the admission of State's exhibits 29 through 34, which were the pictures of empty decongestant boxes and blister packs. *Tr.* at 546. In explaining his grounds for objection, Boggs referred to the *Reemer* case, which dealt with whether labels of commercially marketed drugs were inadmissible hearsay. 835 N.E.2d at 1007–09. During the discussion that ensued regarding the objection, the trial court determined that Boggs's objection was one of weight to be given to the evidence and not admissibility. *Tr.* at 547.

12. Boggs made no spoliation claim before the trial court or on appeal.

the officers that, based on their training and experience, the residue on a casino card and plate found in Boggs's residence was methamphetamine and that aluminum boats and hollowed out light bulbs containing burnt methamphetamine residue were discovered during the search. Boggs also admitted that he was an addict, he used his own "stuff," and mostly manufactured methamphetamine for his own use. *Tr.* 316, 327; *State's Ex.* 53. In *Halsema,* our Supreme Court held that evidence of the identity of a controlled substance was sufficient where the officer, who had received special training concerning the manufacture and distribution of methamphetamine, was asked at trial to identify the contents of a plastic bag and he responded, "it's methamphetamine." 823 N.E.2d at 673 n. 1. We conclude that sufficient evidence was presented to support the inference that Boggs possessed methamphetamine.

■ Finally, as to the possession of marijuana, both Deputy Pettit and Detective Turner testified that the green, leafy substance found was consistent with marijuana, and Detective Turner stated that, based on his training and experience, he had "no doubt" that the substance was marijuana. *Tr.* at 289, 514. Boggs also admitted that the Zigzag cigarette tubes found at his home were used to smoke marijuana and that he only had the small amount of marijuana found in the plastic bags because he did not smoke it much anymore because it was getting "old." *Id.* at 329–30. We believe that sufficient evidence was presented to prove that Boggs possessed marijuana.

■ We therefore conclude that sufficient evidence was presented to prove the identity of the substances. Several police officers, who were sufficiently experienced with methamphetamine and the substances involved in the manufacturing of the drug as well as other controlled substances, testified as to the identity of the substances. Further, evidence of Boggs's admissions of the identity of the substances was also presented to the trial court. Sufficient evidence was presented to support Boggs's convictions for all five of the charged offenses.[13]

### III. Habitual Offender Enhancement

■ Our standard of review for claims of insufficient evidence for habitual offender findings is the same as that for other sufficiency claims. We neither reweigh the evidence nor judge the credibili-

---

13. Here, Boggs did not object to the officers' qualifications or testimony. Unless a witness is qualified as an expert pursuant to Indiana Evidence Rule 702, Evidence Rule 701 limits the witness's testimony to opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. "When the foundation for the admission of evidence is at issue, this court has determined that before the prosecution has any responsibility to establish the foundation, the defense must object that the prosecution has not laid the proper foundation." *Turner v. State,* 878 N.E.2d 286, 294 (Ind.Ct.App.2007), *trans. denied* (2008). Where a proper objection is made to opinion testimony by a lay witness, the proponent of the evidence bears the burden of showing the opinion was rationally based on perception and will be helpful. Ind. Evidence Rule 701. The trial court must then determine whether a proper foundation for the testimony has been established and whether the risk of unfair prejudice substantially outweighs the probative value of such testimony under Evidence Rule 403. In exercising its discretion, the trial court may impose appropriate limits upon the witness's testimony. In *Vasquez v. State,* 741 N.E.2d 1214 (Ind.2001) the issue before the trial court was whether a particular substance was toluene, an intoxicating inhalant. After testifying to their experience and training, the officers in that case testified that the substance "smelled and looked like toluene," and not that it was, in fact, toluene. *Id.* at 1217.

ty of the witnesses. *Gentry v. State*, 835 N.E.2d 569, 572 (Ind.Ct.App.2005). We only consider the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Id.* A verdict will not be disturbed if there is substantial evidence of probative value to support it. *Id.*

Under Indiana law, a person is a habitual offender if the jury or the trial court finds that the State has proven beyond a reasonable doubt that the person has accumulated two prior unrelated felony convictions. Ind.Code § 35–50–2–8(g). A felony conviction is defined as "a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one year." Ind.Code § 35–50–2–1(b). The State may not seek to have a person sentenced as a habitual offender if:

(1) the offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction;

(2) the offense is an offense under IC 9–30–10–16 or IC 9–30–10–17; or

(3) all of the following apply:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27;

(ii) dealing in cocaine or a narcotic drug;

(iii) dealing in a schedule I, II, III controlled substance;

(iv) dealing in a schedule IV controlled substance; and

(v) dealing in a schedule V controlled substance;

does not exceed one (1).

Ind.Code § 35–50–2–8(b). "An amendment of an indictment or information to include a habitual offender charge under [Indiana Code section] 35–50–2–8 . . . must be made not later than ten days after the omnibus date." Ind.Code § 35–34–1–5(e). The trial court may, however, permit the filing of a habitual charge at any time before the commencement of the trial upon a showing of good cause. *Id.*

■■■■ Initially, Boggs contends that the amendment of the charging information to file the habitual offender enhancement violated Indiana Code section 35–50–1–5(e) and his right to sufficient notice of the charges against him because it was not filed until almost two years after the omnibus date and without a showing of good cause. The State originally filed charges against Boggs on February 15, 2006. The State filed an amended information that contained the habitual offender enhancement on January 29, 2008. "It is well established that once a trial court permits the tardy habitual offender filing, an appellant must move for a continuance in order to preserve the propriety of the trial court's order for appeal." *Blanchard v. State*, 802 N.E.2d 14, 39 (Ind.Ct.App.2004). Our review of the record before us shows that Boggs did not move for a continuance; therefore this issue has been waived.

■■■ Boggs next argues that the State inappropriately filed the habitual offender enhancement, or in the alternative, the trial court erred in attaching the habitual offender enhancement to Count I, attempted dealing in methamphetamine as a Class B felony, in violation of Indiana Code section 35–50–2–8(b)(3). In order to violate that subsection, the felony offense to which the habitual offender enhancement attaches must meet all three requirements under (b)(3). Boggs first argues that the

offense meets the first requirement because attempted dealing in methamphetamine as a Class B felony is an offense under Indiana Code section 35–48–4–1. *See* Ind.Code § 35–50–2–8(b)(3)(A). He next claims that no evidence was presented that he had ever been convicted of any of the crimes of "dealing" listed under Indiana Code section 35–50–2–8(b)(3)(C) and therefore his total number of unrelated convictions for such offenses did not exceed one as required by the statute. Therefore, Boggs asserts that, under the provisions of Indiana Code section 35–50–2–8(b), the State was not permitted to seek to have him sentenced as a habitual offender, and the trial court erred in enhancing his sentence.

Although the requirements under (b)(3)(A) and (C) have been met, Boggs makes no argument regarding subsection (b)(3)(B) and whether or not it was met. In order for the State to be precluded from seeking habitual offender enhancement pursuant to subsection (b)(3), all three of the requirements must be met. Under (b)(3)(B), the felony offense for which the State seeks to have a person sentenced as a habitual offender must not be listed in Indiana Code section 35–50–2–2(b)(4). *See* Ind.Code § 35–50–2–8(b)(3)(B). As previously stated, the felony offense at issue here is attempted dealing in methamphetamine as a Class B felony charged under Indiana Code section 35–48–4–1. One of the offenses listed in Indiana Code section 35–50–2–2(b)(4) is an offense charged under Indiana Code section 35–48–4–1 if the trial court finds the person possessed a firearm at the time of the offense. Ind.Code § 35–50–2–2(b)(4)(O). Here, Boggs was also charged and convicted of two counts of possession of a precursor while in possession of a firearm. Therefore, subsection (b)(3)(B) did not apply, and it was not error for the habitual offender enhancement to be attached to Count I, attempted dealing in methamphetamine as a Class B felony.

■ Boggs finally argues that the State did not present sufficient evidence to support his habitual offender finding. He argues that no evidence was introduced to show that his prior federal conviction was a felony because nothing established that the conviction provided for a possibility of a sentence in excess of one year; the documents merely established that he was placed on probation for three years and not that he received a three-year suspended sentence. Therefore, he asserts that the evidence presented did not establish beyond a reasonable doubt that the prior federal conviction was a felony conviction.

In support of the habitual offender enhancement, the State submitted evidence of Boggs's prior conviction in the United States District Court for the Southern District of Indiana, where he was placed on probation for three years. The trial court ruled that the State's evidence showed that Boggs received three years of probation for his prior federal conviction, and pursuant to Indiana Code section 35–50–2–1(b), this qualified as a felony conviction because it was a crime for which the person may have been imprisoned for more than one year. *Tr.* at 684–85. Boggs's prior conviction was under 18 U.S.C. § 922(a)(6), and at the time Boggs was convicted, a conviction under that section carried a penalty of imprisonment for not more than ten years. 18 U.S.C. § 924(a)(2) (1994).

■ In deciding whether a prior conviction was a felony, " [t]he determinative issue is whether the Defendant might have been sentenced to a term of imprisonment greater than one (1) year.' " *Welch v. State*, 828 N.E.2d 433, 439 (Ind.Ct.App. 2005) (quoting *McBrady v. State*, 459 N.E.2d 719, 725 (Ind.1984)). If "the controlling statute at the time of the defen-

dant's conviction provided for the possibility of imprisonment for more than one year, the prior conviction was a felony within the meaning of the habitual offender statute." *Id.* The analysis is not changed when the defendant receives something akin to a suspended sentence. *Id.* Here, because the version of 18 U.S.C. § 924(a)(2) in place at the time of Boggs's prior conviction provided for the possibility of imprisonment of more than one year, Boggs's prior conviction was a felony within the meaning of the habitual offender statute, and his habitual offender finding was supported by sufficient evidence.

## IV. Inappropriate Sentence

■ "This court has authority to revise a sentence 'if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" *Spitler v. State,* 908 N.E.2d 694, 696 (Ind.Ct.App. 2009) (quoting Ind. Appellate Rule 7(B)), *trans. denied.* "Although Indiana Appellate Rule 7(B) does not require us to be 'extremely' deferential to a trial court's sentencing decision, we still must give due consideration to that decision." *Patterson v. State,* 909 N.E.2d 1058, 1062–63 (Ind.Ct. App.2009) (quoting *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind.Ct.App.2007)). We understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* at 1063. The defendant bears the burden of persuading this court that his sentence is inappropriate. *Id.*

■ Boggs argues that his aggregate forty-year sentence was inappropriate in light of the nature of the offense and the character of the offender. He contends that, as to his character, his criminal history was far removed in time and character from the current offenses and make his

sentence inappropriate. He further claims that the trial court's finding that the evidence of a "well-planned carefully devised use of hardware to manufacture methamphetamine" was an aggravator made his sentence inappropriate because there was no indication that Boggs's crimes were more extensive or dangerous than the conduct contemplated by the statute. *Tr.* at 728. Based on these arguments and his previous arguments regarding his habitual offender enhancement, Boggs believes that his forty-year sentence was inappropriate in light of the nature of the offense and the character of the offender.

As to the nature of the offense, the police found a significant amount of paraphernalia and precursors involved in the manufacturing of methamphetamine and the use of methamphetamine and marijuana as well as a firearm on Boggs's property. Boggs also admitted that he was an addict and routinely cooked and sold methamphetamine. *Tr.* at 316, 327. Further, Detective Turner testified at sentencing that, based upon the evidence recovered from Boggs's property, it appeared that Boggs had been involved in the manufacturing of methamphetamine for some time. *Id.* at 722.

As to Boggs's character, he had a significant criminal history that consisted of two prior felony convictions, two prior misdemeanor convictions, two juvenile adjudications, three probation revocations, several arrests, and at the time of the present offenses, had an outstanding warrant on drug charges. Further, at the time of sentencing, Boggs had pending charges for possession of methamphetamine and escape. Although not all of Boggs's past arrests had resulted in convictions, they were still proper considerations when evaluating the character of the offender. *Johnson v. State,* 837 N.E.2d 209, 218 (Ind. Ct.App.2005), trans. denied (2006). " '[A]

record of arrests, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State.' " *Id.* (quoting *Cotto v. State*, 829 N.E.2d 520, 526 (Ind.2005)). We conclude that Boggs's forty-year aggregate sentence was not inappropriate in light of the nature of the offense and the character of the offender.[14]

Affirmed and remanded.

DARDEN, J., and BAILEY, J., concur.

---

**14.** We note that the trial court erred when it imposed the habitual offender enhancement as a separate consecutive sentence. *See Barnett v. State*, 834 N.E.2d 169, 173 (Ind.Ct.App. 2005) (stating that habitual offender finding does not constitute separate crime and does not result in separate sentence; rather it results in sentence enhancement imposed upon conviction of subsequent felony). Therefore, the case should be remanded to correct the sentencing order to reflect that Boggs was sentenced to fifteen years for his Class B felony conviction, enhanced by twenty-five years for the habitual offender finding resulting in a total sentence of forty years executed.