## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 29 2016, 6:07 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Latanya T-Butler, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 29, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1505-CR-389 <br><br> Appeal from the <br> Marion Superior Court <br><br> The Honorable <br> Amy J. Barbar, Magistrate <br><br> Trial Court Cause No. <br> 49G02-1303-FB-20098 |

**Kirsch, Judge.**

Latanya T-Butler ("T-Butler") was convicted after a jury trial of battery[1] as a Class B felony, neglect of a dependent[2] as a Class D felony, and battery[3] as a Class D felony[4] and was given an aggregate twelve-year sentence. T-Butler raises the following restated issue for our review: whether the evidence presented at trial was sufficient to support her convictions for Class B felony battery and Class D felony neglect of a dependent.

We affirm.

## Facts and Procedural History

During the early months of 2013, Laverne Perkins ("Laverne") had custody of J.P., the two-year-old son of her brother, Gerald Perkins ("Gerald"), while Gerald was in prison. In February and March of 2013, J.P. was living with Laverne and her elderly father, who was in hospice in the home. During that period of time, Laverne became ill with the flu. On Sunday, February 24, 2013, she spoke with T-Butler, who was engaged to Gerald, and T-Butler offered to

---

[1] *See* Ind. Code § 35-42-2-1(a)(4).

[2] *See* Ind. Code § 35-46-1-4(a)(1).

[3] *See* Ind. Code § 35-42-2-1(a)(2).

[4] We note that, effective July 1, 2014, new versions of these criminal statutes were enacted. Because T-Butler committed her crimes prior to July 1, 2014, we will apply the statutes in effect at the time she committed her crimes.

take J.P. for three days so Laverne could recover from the flu. On the same date, T-Butler took J.P. into her home to care for him.

[4] On the date that T-Butler took J.P., he had no marks or injuries on his body. J.P. had been diagnosed with ringworm, and Laverne forgot to send his medication when J.P. went to T-Butler's home. T-Butler had two other boys in her home, a three-year-old and an eighteen-month-old. Laverne spoke on the phone with T-Butler every day that J.P. was staying with T-Butler. During one of these calls, T-Butler told Laverne that J.P. had an accident in the bathroom, had taken off his pajamas, and had played "with the boo boo in the toilet, splashing all over the bathroom." *Tr.* at 20-21. T-Butler also told Gerald about the incident when she spoke with him on the phone as the incident was occurring.[5] When T-Butler first discovered what J.P. had done, she struck J.P. Gerald and T-Butler continued to discuss the incident and speak about how Laverne let J.P. get away with too much. At one point, T-Butler said that Laverne was "priming [J.P.] to get his ass tore up. I'm not going for none of that shit." *State's Ex.* 19; *State's Ex.* 20 at 24. While talking with Gerald, T-Butler also mentioned am incident where J.P. urinated on her floor, and she "tried to remodel his ass." *State's Ex.* 19; *State's Ex.* 20 at 5.

[5] During her conversation with Gerald, T-Butler mentioned an earlier incident where J.P. had told her no and told her to "shut up." *State's Ex.* 19; *State's Ex.*

---

[5] Gerald was incarcerated in the Miami Correctional Facility at the time and several of his recorded phone calls were admitted at trial.

20 at 12. T-Butler hit J.P. in the mouth, causing his lips to swell noticeably. On Wednesday, the day when J.P. was originally supposed to go back to Laverne's house, Laverne called T-Butler to inform her that she would be coming over to pick up J.P., but T-Butler told Laverne that J.P. was watching movies with her boys and that Laverne did not sound well yet. Laverne told T-Butler that she would bring over some more clothing for J.P., but T-Butler told Laverne they were not home. T-Butler said they were at McDonald's, so Laverne arranged for a mutual friend to take clothes to the restaurant.

[6] Laverne gave Juanita Chavers ("Juanita"), the mutual friend, a bag of clothing and J.P.'s ringworm medication and told Juanita to let T-Butler know that Laverne would take J.P. back at the monthly meeting of the motorcycle club, to which they all belonged, that was scheduled for the next Sunday. T-Butler was not at the McDonald's when Juanita arrived, so Juanita proceeded to T-Butler's home. When she got to the home, Juanita saw J.P., but he did not seem to be as energetic as usual. She also observed that his face was scratched, his lip was swollen, and he was crying. Juanita also noticed that J.P. would stop crying whenever T-Butler would look at him. Juanita thought that J.P. and the other boys had been in a fight, so she did not say anything.

[7] DeMetra Perkins ("DeMetra"), who is Laverne's niece and a cousin to J.P., went to T-Butler's home that same night to do T-Butler's hair. When she saw J.P., she noticed that his lip was "busted," and she asked T-Butler what happened to him. *Tr.* at 156. T-Butler explained to DeMetra that J.P. had told

her no and told her to shut up, so she had "popped him" in the mouth. *Id*. DeMetra observed that J.P. was being quiet and kind of sleepy.

[8] On Sunday, March 3, 2013, at the club meeting, T-Butler brought J.P., and Laverne immediately noticed that J.P.'s lips were swollen and "pussy," he had scratches on his face, there were open sores behind his ears, his hands were swollen, and his "mouth was stuck like he really couldn't talk." *Id*. at 24-25. When Laverne asked what had happened, T-Butler denied anything happened to J.P. and said she did not even notice anything wrong with him. She also stated that one of her boys could have hit him with a toy and later also admitted that she had spanked J.P. During the meeting, some people came over and tried to pick J.P. up, but he would start crying when they did, so Laverne tried to get him to sit next to her, but he only wanted to stand.

[9] Laverne told T-Butler that something was wrong with J.P. and that Laverne intended to take him to the hospital. T-Butler did not want Laverne to take him to the hospital and, instead, suggested that Laverne take him to DeMetra's mother, Dorothy, who is a nurse. Laverne did so and allowed Dorothy to look at J.P. When Dorothy pulled down J.P.'s pull-up diaper, she ripped off a bunch of scabs from J.P.'s buttocks, and his buttocks were bleeding. At that time, Laverne took J.P straight to the hospital. While she was on her way there, Laverne received several phone calls from T-Butler asking if Laverne was really taking J.P to the hospital. During these calls, when Laverne asked T-Butler who had taken care of J.P., T-Butler responded, "nobody but [me]." *Id*. at 35.

[10]    At the hospital, it was determined that J.P. had second degree burns on both of his buttocks, which had been caused by contact with a very hot flat object. His left buttock was infected, and both sides had dead skin. The burn on his right buttock measured eight-and-a-half centimeters by five centimeters, and the burn on the left side measured five centimeters by five centimeters. The burns were determined to be at least forty-eight hours old, but less than seven days old. Additionally, it was discovered that J.P. had an abrasion and bruising on his forehead, a superficial laceration to his lip, and bruises to his thighs. It was also determined that J.P. had finger-shaped bruises to his upper arms and around both knees. J.P. was running a fever of 102 degrees, which the doctor who treated J.P. stated was "a significant fever for a two year old." *Id*. at 77. J.P.'s symptoms of listlessness, fever, and elevated white blood cell count were attributed to a staph infection from the burns on his buttocks.

[11]    J.P. was admitted into the hospital and stayed for a week. He received I.V. fluids and antibiotics and was treated for sepsis, which is the body's response to a severe infection where oxidants are released into the bloodstream in large quantities. *Id*. at 118. These oxidants are toxic, and sepsis can be fatal. The burns to J.P.'s buttocks were determined to be the source of the sepsis. A hot plate consistent with the burns found on J.P.'s buttocks was found in T-Butler's house.

[12]    On March 26, 2013, the State charged T-Butler with battery as a Class B felony, neglect of a dependent as a Class B felony, and battery as a Class D felony. A jury trial was held on March 30 and 31, 2015. At trial, T-Butler's defense was

that J.P.'s injuries were caused because he contracted an extremely rare disorder called Stevens-Johnson Syndrome as a side effect of his ringworm medication. However, Dr. Clinton Cavett ("Dr. Cavett"), the doctor who treated J.P., ruled out Stevens-Johnson Syndrome because it shows up all over the body and resists treatment. J.P.'s symptoms were localized to his buttocks, and responded immediately to antibiotics. *Tr.* at 106-08, 114. At the conclusion of the trial, the jury found T-Butler guilty of all three counts. On May 8, 2014, a sentencing hearing was held, and the trial court amended the Class B felony neglect of a dependent conviction to a Class D felony. The trial court sentenced T-Butler to twelve years for her Class B felony battery conviction with ten years executed and two years suspended to probation to run concurrent with a two-year-sentence for her Class D felony neglect of a dependent conviction, but consecutive to a two-year-sentence for her Class D felony battery conviction, which resulted in an aggregate sentence of twelve years executed. T-Butler now appeals.

## Discussion and Decision

[13] The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb the jury's verdict if there is substantial

evidence of probative value to support it. *Id*. A conviction may be based upon circumstantial evidence alone. *Boggs*, 928 N.E.2d at 864. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tooley v. State*, 911 N.E.2d 721, 724-25 (Ind. Ct. App. 2009), *trans. denied*. As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[14] T-Butler argues that the State failed to present sufficient evidence to support her convictions for battery as a Class B felony and neglect of a dependent as a Class D felony. As to the battery conviction, she specifically contends that insufficient evidence was presented to prove that she was responsible for any serious injury to J.P's buttocks because all of J.P.'s injuries were consistent with the side effects of the ringworm medication he was taking. As to the neglect of a dependent conviction, T-Butler asserts that the State failed to prove beyond a reasonable doubt that she knowingly placed J.P. in a situation that endangered his life or health because insufficient evidence was presented to show she was responsible for J.P.'s injury to his buttocks or that she failed to obtain medical treatment for him.

[15] In order to convict T-Butler of Class B felony battery, the State was required to prove beyond a reasonable doubt that she was at least eighteen years of age and knowingly or intentionally touched J.P., who was less than fourteen years old, in a rude, insolent, or angry manner resulting in serious bodily injury to J.P. Ind. Code § 35-42-2-1(a)(4). In the charging information, the State specifically

alleged that T-Butler struck or burned J.P., which caused "serious permanent disfigurement and/or extreme pain" to J.P. *Appellant's App.* at 21.

[16] In the present case, the evidence showed that, when J.P. was brought to the hospital on March 3, 2013, he was suffering from second degree burns on both of his buttocks, which had been caused by contact with a very hot flat object. Prior to that date, J.P. had been staying with T-Butler in her home continuously for seven days. During that period of time, he was only at T-Butler's home and in her care. Evidence was also presented that, at the time that J.P. was placed in T-Butler's care, he did not have any injuries, but that the injuries were present when he was returned to Laverne's care. The State presented evidence that a hot plate consistent with the burns on J.P.'s buttocks was found in T-Butler's home. Dr. Cavett confirmed that the burns on J.P.'s body could have been inflicted with the hot plate. *Tr.* at 111. T-Butler's arguments that J.P.'s injuries were caused by an adverse reaction to his ringworm medication are a request for this court to reweigh the evidence, which we cannot do on appeal. *Boggs*, 928 N.E.2d at 864. She presented this defense theory at trial, and the jury clearly disregarded it and found her guilty of the crime. Viewing the evidence in a light most favorable to the verdict, as our standard of review dictates, we conclude that sufficient evidence was presented to support T-Butler's conviction for Class B felony battery.

[17] In order to convict T-Butler of Class D felony neglect of a dependent, the State was required to prove beyond a reasonable doubt that she, having the care of J.P., knowingly or intentionally placed J.P. in a situation that endangered his

life or health. Ind. Code § 35-46-1-4(a)(1). Specifically, the State alleged in the charging information that T-Butler placed J.P. in a situation that endangered his life or health when she "failed to seek medical attention for [J.P.] after . . . T-Butler did observe that [J.P.] was injured and/or . . . T-Butler did injure [J.P.]" *Appellant's App.* at 21-22.

[18] Initially, T-Butler again raises the argument that she did not cause J.P.'s injuries because they resulted from an adverse reaction to his medication. As we stated above, this is merely an invitation for this court to reweigh the evidence, which we do not do. *Boggs*, 928 N.E.2d at 864. The evidence presented at trial showed that the burns to J.P.'s buttocks were inflicted by T-Butler, probably using the hotplate on his bare buttocks, and not by an adverse reaction to his medication. Based on the evidence most favorable to the verdict that T-Butler inflicted the injuries to J.P., she was, therefore, aware that the injuries existed and knew the nature of the injuries. Moreover, the evidence established that she did not seek medical attention for J.P. by taking him to the doctor or hospital. In fact, when Laverne discovered the injuries upon J.P.'s return to her care and informed T-Butler that she was taking J.P. to the hospital, T-Butler attempted to stop her from doing so. At trial, evidence was presented that T-Butler tried to convince Laverne not to take J.P. to the hospital because T-Butler feared that the Department of Child Services would then become involved in her life. *Tr.* at 28, 210. T-Butler, therefore, not only failed to seek medical care for J.P. and for the injuries she inflicted on him, but she also attempted to impede others from obtaining medical attention for J.P. We

conclude that sufficient evidence was presented to support T-Butler's conviction for Class D felony neglect of a dependent.

[19] Affirmed.

Mathias, J., and Brown, J., concur.