## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 19 2016, 7:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert M. Keeton, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff.* | April 19, 2016 |
| | Court of Appeals Case No. 66A03-1510-CR-1645 |
| | Appeal from the Pulaski Superior Court |
| | The Honorable Patrick Blankenship, Judge |
| | Trial Court Cause No. 66D01-1502-F6-9 |

**Kirsch, Judge.**

[1] Robert M. Keeton ("Keeton") was convicted after a jury trial of theft[1] as a Class A misdemeanor and battery[2] as a Class B misdemeanor. He appeals his convictions, raising the following issue for our review: whether the State presented sufficient evidence to support his convictions for battery and theft.

[2] We affirm.

## Facts and Procedural History

[3] On February 2, 2015, Kenneth W. Smith, Sr. ("Smith"), a retired Ironworker and former Town Marshal of Medaryville from 1989 to 2000, was driving home on Delaware Street in Medaryville, Indiana when he noticed a blue Ford car ("the Ford") stopped in an alley running between Delaware and Boston Streets. Smith thought there was suspicious activity taking place based on things he had previously observed, so he turned his vehicle around and went back to the alley. Smith parked and saw a passenger get out of the car and walk down the alley; the Ford then drove away. Smith recognized the person who exited the Ford as Dillon West ("West"), whom Smith had known for a few years. Smith approached West and asked him if he was the one stealing from Henry Risner ("Risner"), who owned an antiques store and scrap metal business that was located nearby. West was wearing an orange sweatshirt, and Smith thought West was hiding something underneath it because the sweatshirt bulged from

---

[1] *See* Ind. Code § 35-43-4-2(a).

[2] *See* Ind. Code § 35-42-2-1(b)(1).

West's body and West was holding his arms under the bulge. Smith had his video camera with him and began recording the encounter due to the fact he thought West was stealing something. When Smith asked West if he was stealing from Risner, West did not answer and started walking toward Boston Street where the Ford had returned.

[4] Smith followed West and videotaped the occupants of the Ford. Smith observed a man, who was later identified as Keeton, in the driver's seat and two women in the back seat. When they saw Smith videotaping them, the occupants of the car ducked down, and Keeton pulled his jacket over the top of his head as he drove away. Smith, still believing that Keeton and the others were involved with stealing from Risner, got into his vehicle and began to follow the Ford. As he followed Keeton, Smith called the Pulaski County Sheriff's Department, gave dispatch the license plate number for the Ford, and informed them that he was following the Ford, which he thought had stolen items inside. While following the Ford, Smith saw Keeton throw a blue plastic bottle out of the driver's side window. The Ford eventually turned onto County Road 1000 West and stopped after traveling about three-quarters of a mile. Smith stopped his vehicle about 150 feet behind the Ford. Smith was still recording the events, and his video camera was located on the dashboard, slightly off center and closer to the driver's seat.

[5] Smith remained in his vehicle, but Keeton exited the Ford and walked toward Smith's vehicle. Smith could tell that Keeton was very upset because his face was red, and he was throwing his arms around. Smith rolled his window

halfway down, and Keeton angrily asked him, "What the F are you, what the F are you doing?" *Tr.* at 132. Keeton looked inside Smith's vehicle, saw the video camera, and reached in and grabbed the camera off of the dashboard. Keeton began to pull the camera out of the vehicle, and Smith grabbed the sleeve of Keeton's coat to attempt to stop him from taking the camera. Keeton was able to pull the camera out of Smith's vehicle while Smith maintained a hold on his sleeve. When Smith's arm was outside of the window, Keeton pulled Smith's arm downward onto the partially-opened window, causing Smith to let go of Keeton's sleeve. Smith's arm hit the window with enough force that it damaged the window, causing it to come off the track of the door and no longer move up or down.

[6] Keeton went back to the Ford carrying Smith's video camera. When Keeton drove away, Smith again followed him and observed West throwing items out of the passenger side window. As Smith followed the Ford, he maintained communication with dispatch. Sheriff's deputies were dispatched and came upon the Ford on State Road 39 near County Road 700 South. The deputies initiated a traffic stop on the Ford due to the fact that Keeton was driving left of the center line. After obtaining identification from the occupants of the Ford, the deputies received consent from Keeton to search the Ford. Inside the car, the police found a container of Liquid Fire and coffee filters under the front passenger seat and plastic baggies in the glove box. Smith informed the deputies of the locations where he had seen Keeton and West throwing items out of the Ford. The deputies searched the area and found items Smith had

described observing being thrown, including cold packs and a bottle of Drano. Smith returned the next day and recovered the lens to his video camera, but was not ever able to locate the rest of the camera. Smith also found a blue bottle which appeared to be part of a "one pot" methamphetamine manufacturing method and was later determined to contain "pill dough." *Id.* at 209, 211.

[7] On February 27, 2015, the State charged Keeton with possession of chemical reagents or precursors with intent to manufacture a controlled substance as a Level 6 felony, theft as a Class A misdemeanor, and battery as a Class A misdemeanor. A jury trial was held, and at the conclusion, Keeton was found guilty of Class A misdemeanor theft and Class B misdemeanor battery as a lesser included offense. He was found not guilty of possession of chemical reagents or precursors with intent to manufacture a controlled substance. Keeton now appeals his convictions.

## Discussion and Decision

[8] The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Id*. A conviction may be based upon

circumstantial evidence alone. *Boggs*, 928 N.E.2d at 864. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tooley v. State*, 911 N.E.2d 721, 724-25 (Ind. Ct. App. 2009), *trans. denied*. As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[9] Keeton argues that the State failed to present sufficient evidence to support both his theft and battery convictions. He specifically alleges that, as to his battery conviction, the evidence presented showed that he never touched Smith; instead, it was Smith who touched him when he grabbed Keeton's sleeve. Additionally, he contends that, even if he touched Smith, it was not intentional or knowing or done in a rude, insolent, or angry manner. As to his theft conviction, Keeton claims that evidence did not prove that he knowingly or intentionally exerted unauthorized control over Smith's video camera because he and his three passengers all testified that the Ford never stopped after leaving the alley area until the traffic stop was initiated by the deputies, and therefore, he never took Smith's video camera. He further asserts that, although a single eyewitness's testimony can be sufficient to support a conviction, Smith's testimony "was so suspect" that "it alone could not constitute proof beyond a reasonable doubt." *Appellant's Br*. at 16.

[10] In order to convict Keeton of Class B misdemeanor battery, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally touched another person in a rude, insolent, or angry manner. Ind. Code § 35-

42-2-1(b)(1). "While battery requires [a] defendant to have intended to touch another person, [the] defendant need not personally touch another person since battery may be committed by the unlawful touching by defendant or by any other substance put in motion by defendant. *Matthews v. State*, 476 N.E.2d 847, 850 (Ind. 1985) (citing *Reed v. State,* 255 Ind. 298, 302, 263 N.E.2d 719, 722 (1970). "[A]ny touching of the person in an angry, revengeful, rude, or insolent manner; spitting upon the person; jostling him out of the way; pushing another against him; throwing a squib or any missile, or water upon him; striking the horse he is riding, whereby he is thrown; taking hold of his clothes in an angry or insolent manner, to detain him, is a battery." *Kirland v. State*, 43 Ind. 146, 149 (1873).

[11] Here, the evidence most favorable to the verdict showed that, when Smith and the Ford were pulled over on the side of the road, Keeton exited the Ford and approached Smith, appearing very upset with a red face and gesturing wildly with his arms. When Keeton reached Smith's vehicle, he uttered obscenities to Smith and then reached in to grab Smith's video camera. As Keeton was taking the camera, Smith grabbed onto Keeton's sleeve to try to stop him from stealing the camera. When Smith's arm was outside of the window, Keeton intentionally pulled Smith's arm downward onto the partially-opened window, which caused Smith to let go of Keeton's sleeve. Smith's arm hit the window with enough force that it caused Smith physical pain and damaged the window. Although Smith grabbed Keeton's sleeve in an attempt to stop him from stealing the video camera, it was Keeton who caused the battery by

intentionally pulling Smith's arm in a downward motion and causing it to collide with the window. We conclude that sufficient evidence was presented to support Keeton's conviction for Class B misdemeanor battery. Keeton's contentions are merely requests for us to reweigh the evidence, which we cannot do. *Boggs*, 928 N.E.2d at 864.

[12]     In order to convict Keeton of Class A misdemeanor theft, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally exerted unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. Ind. Code § 35-43-4-2(a). "A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[13]     In the present case, the evidence most favorable to the jury's verdict showed that when Keeton approached Smith's vehicle and noticed the video camera inside, he reached in, grabbed the camera, and removed it from Smith's vehicle. Keeton then walked back to the Ford with the video camera and never returned it to Smith. Therefore, Smith's testimony established that he had a video camera located on the dashboard of his vehicle, that Keeton reached in and removed it from the vehicle without Smith's authorization, and that Keeton walked back to the Ford with the camera, permanently depriving Smith of the camera's value or use. We conclude that sufficient evidence was presented to support Keeton's conviction for Class A misdemeanor theft. Keeton's arguments to the contrary are invitations for this court to reweigh the evidence

and judge the credibility of the witnesses, which we cannot do. *Boggs*, 928 N.E.2d at 864.

[14] Affirmed.

[15] Riley, J., and Pyle, J., concur.