# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SCOTT KING**
Woodward, Buls, Blaskovich & King, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
**IAN MCLEAN**
Deputy Attorneys General
Indianapolis, Indiana

FILED
Aug 06 2012, 9:02 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DONALD GREGORY HULS,           )
                               )
    Appellant-Defendant,       )
                               )
        vs.              )   No. 64A04-1110-CR-552
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.        )

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-0906-FC-5880

**August 6, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

Donald Gregory Huls appeals his two convictions of criminal recklessness, one as a Class C felony and one as a Class D felony. Ind. Code § 35-42-2-2 (2006). We affirm.[1]

## ISSUES

Huls raises three issues, which we restate as:

I. Whether Huls was entitled to a mistrial based on his claim of prosecutorial misconduct.

II. Whether the trial court abused its discretion by rejecting Huls' proposed jury instructions on self-defense and mistake of fact.

III. Whether the State provided sufficient evidence to rebut Huls' claim of self-defense.

## FACTS AND PROCEDURAL HISTORY

On the night of June 14, 2009, four teenagers, A.M., E.M., C.M., and J.G., were at a party at a friend's house in Valparaiso, Indiana. At around midnight, they decided to walk to a convenience store for snacks. It was dark, the neighborhood was not well-lit, and the teenagers were unfamiliar with the area. As they walked along Highway 30, they passed a wooded area with heavy underbrush. Suddenly, the teenagers heard someone shout, "Hey," which was followed by a gunshot. Tr. p. 132. They sought cover in the woods. More shots were fired in their direction, and A.M. was shot in the right leg. Some of the teenagers heard a man shout, "Get the f**k out of here." *Id.* at 173. At that

---

[1] We heard oral argument on June 21, 2012 at Indiana State University during the Hoosier Girls State program. We thank the parties for their helpful presentations, and we thank Indiana State University and Hoosier Girls State for their hospitality.

point, C.M. shouted, "We're getting out of here. We're going. Stop shooting." *Id.* However, their assailant continued shooting. The teenagers returned to Highway 30, with two of them carrying A.M., and called 911.

The police arrived at the scene shortly afterwards. However, they had been dispatched in response to a 911 call by Huls, whose property overlooked and included a portion of the wooded area. Huls had told the 911 dispatcher that he had shot at people who were trying to break into his house. A.M. was taken to the hospital, and the officers took the other three teenagers into custody. Next, the officers went to Huls' house, where he told the officers he had been unloading his recreational vehicle when he heard noises in the woods and opened fire with his pistol. Huls acknowledged hearing someone asking him to stop shooting because they were leaving, and he told the officers that in response he fired more bullets until his clip was empty, reloaded his gun, and fired additional bullets. He then went inside and called 911. Huls stated that he never saw who was in the woods because it was dark. The police recovered fourteen shell casings at Huls' property.

The State charged Huls with two counts of criminal recklessness and one count of pointing a firearm at another person, a Class D felony, Ind. Code § 35-47-4-3 (1995).

At trial, Huls called expert witness Steven Michael Neese to testify. Neese had prepared a diagram of Huls' property showing the pattern of Huls' gunshots. During direct examination, Huls attempted to ask Neese if Neese's testimony was consistent with Huls' statement to the police, and the State objected because Neese had not read the

statement.  When Huls attempted to show Neese a copy of Huls' statement, the following

discussion occurred:

> [Huls]: Okay.  You're looking at State's Exhibit No. 25(A), recorded statement of Donald Gregory Huls taken by the Porter County Sheriff's Department, 15th day of June 2009.
>
> [State]: Judge, I'm going to object to this because the defendant is here to testify.  He can't now learn—
>
> [Huls]: Objection, Your Honor.  Leave to approach the bench?
>
> The Court: Yes, you may.
>
> (Bench conference held.)
>
> [Huls]: Judge, I move for mistrial.  I move for mistrial.

Tr. pp. 528-29.  During a subsequent discussion outside the presence of the jury, Huls

asserted that the State had improperly commented on his failure to testify, but he did not

request an admonishment, stating that "no curative instruction, the case law is clear, can

unring that bell."  *Id.* at 529-30.  Later in the discussion, the trial judge stated, "I don't

think a curative instruction would help at all.  In fact, it will just draw attention to it." *Id.*

at 533.  The trial court took the motion for mistrial under advisement and continued with

the presentation of evidence.  The trial court denied Huls' motion after the jury retired to

deliberate.  The jury found Huls guilty of both counts of criminal recklessness but not

guilty of pointing a firearm.  The trial court sentenced Huls accordingly, and this appeal

followed.

4

DISCUSSION AND DECISION

I. REQUEST FOR MISTRIAL

Huls claims that at trial, the prosecutor improperly commented upon his failure to testify in violation of his privileges against self-incrimination under the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution. The State responds that Huls waived this claim for appellate review. The State further argues that if the claim is not waived, the prosecutor's comment did not place Huls in a position of grave peril.

It is well established that when an improper statement is alleged to have been made, failure to request an admonishment or to move for mistrial results in waiver of the claim for appellate review. *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004). The State contends that Huls waived his challenge to the prosecutor's comment because Huls moved for a mistrial but did not request an admonishment. We disagree. Huls' motion for mistrial sufficiently articulated to the trial court Huls' challenge to the prosecutor's comment. Furthermore, the trial court agreed with Huls that an admonishment would not have helped. Thus, Huls' claim is preserved for our review. *Cf. id.* (determining that Dumas' claim of prosecutorial misconduct was waived because Dumas neither requested an admonishment nor moved for mistrial).

Turning to the merits of Huls' claim, the denial of a motion for mistrial lies within the sound discretion of the trial court, and this Court reviews only for abuse of that discretion. *Lucio v. State*, 907 N.E.2d 1008, 1010 (Ind. 2009). A mistrial is an extreme remedy and should be granted only when no other action will remedy the situation. *Id.* at

5

1010-11. The trial judge is in the best position to gauge the surrounding circumstances and the impact on the jury when deciding whether a mistrial is appropriate. *Oliver v. State*, 755 N.E.2d 582, 585 (Ind. 2001).

In reviewing a claim of prosecutorial misconduct, we determine whether the prosecutor engaged in misconduct and, if so, whether the misconduct, under the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Brown v. State*, 912 N.E.2d 881, 899 (Ind. Ct. App. 2009), *trans. denied*. The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.* A defendant's privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence. *Boatwright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001).

In this case, during Huls' presentation of his case-in-chief, the State objected to Huls' attempt to show his expert witness a copy of his statement to police, noting: "I'm going to object to this because the defendant is here to testify." Tr. p. 528. The prosecutor's statement was a clear reference to Huls' availability to testify. However, the statement was isolated in nature, and it does not appear that the prosecutor was deliberately attempting to prejudice the jury to deprive Huls of a fair trial. *See Watkins v. State*, 766 N.E.2d 18, 26 (Ind. Ct. App. 2002) (determining that a prosecutor's comments during closing arguments that Watkins had failed to present evidence did not have a

6

probable persuasive impact on the jury because the comments were not intended to improperly influence the jury), *trans. denied*.

Huls asserts that the prosecutor's comment prejudiced him because he had initially cooperated with investigators, and the prosecutor's reference to Huls' failure to testify at trial "created even more of an invitation for the jury to infer guilt by Mr. Huls' silence." Appellant's Reply Br. p. 3. We disagree. Here, there is no dispute that Huls shot at the teenagers and that one of his shots struck A.M. in the leg. Huls argued that he acted to defend himself and his property, but the evidence at trial demonstrated that the teenagers were not on Huls' property and were not the aggressors. Furthermore, Huls opened fire without identifying his target, and he continued to fire even after the teenagers shouted to him that they were leaving. In light of this evidence, we conclude that the prosecutor's isolated comment did not have a probable persuasive effect on the jury and did not place Huls in grave peril. *See Redmon v. State*, 734 N.E.2d 1088, 1093 (Ind. Ct. App. 2000) (determining that the prosecutor's comment during closing arguments on Redmon's failure to provide evidence to dispute the charge of marijuana possession did not have a probable persuasive effect on the jury in light of the other evidence against Redmon). Therefore, the trial court did not err by denying Huls' motion for mistrial.

## II. PROPOSED JURY INSTRUCTIONS

Huls argues that the trial court erred by rejecting two instructions he tendered on his claim of self-defense and one instruction he tendered on the defense of mistake of fact. The State contends that Huls' proposed instructions were flawed and that the trial court's instructions were adequate.

The manner of instructing the jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for abuse of that discretion. *Boney v. State*, 880 N.E.2d 279, 293 (Ind. Ct. App. 2008), *trans. denied.* In reviewing a trial court's decision to give or refuse tendered jury instructions, the appellate court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Corbett v. State*, 764 N.E.2d 622, 629 (Ind. 2002).

In this case, Huls tendered several instructions on self-defense. His Tendered Final Instruction Number 3 ("Instruction 3") provides:

> Because the defendant has raised the defense of legal authority, particularly self-defense; defense of others and defense of property adjoining his dwelling, the burden is now on the State of Indiana to negate the presence of one or more of the necessary elements of those defenses beyond a reasonable doubt.
>
> The questions concerning the existence of the imminent use of unlawful force; the unlawful entry upon the Defendant's property; the necessity or apparent necessity of using force, as well as the amount of force necessary to repel an attack or terminate the unlawful entry upon the Defendant's property, can only be determined from the standpoint of the Defendant at the time and under all existing circumstances. In using force to protect person or property, the Defendant ordinarily is required to act immediately, without time to deliberate and investigate. In such circumstances, the danger which exists only in appearance is as real and imminent to him as if it were actual.
>
> The important question is: Was the danger actual to the Defendant's comprehension? It is not whether an injury or unlawful entry of property was actually intended by the assailants, but whether it presented a danger from the Defendant's point of view under the circumstances.

Appellant's App. p. 65. The trial court rejected this instruction because it did not think the instruction reflected "the absolute state of the law." Tr. p. 567. Huls' Tendered Final Instruction Number 4 ("Instruction 4") provides,

> Actual danger is not necessary to justify self-defense. The question of the existence of such danger, the necessity or apparent necessity to act, and the amount of force necessary to resist a perceived attack can only be determined from the standpoint of the accused under all of the circumstances existing at the time. If a person is confronted by an appearance of danger which arouses in his mind an honest conviction that he is about to suffer death or great bodily harm, and if a reasonable person in the same situation, knowing the same facts, would be justified in believing himself in danger, then the accused's right of self-defense is the same whether the danger is real or not. A person may use the force reasonably necessary to resist an attack or apparent attack. He will not be accountable for an error in judgment as to the amount of force necessary provided he acted reasonably and honestly.

Appellant's App. p. 66. The trial court rejected this instruction because it concluded it was covered by other instructions, and the court did not "believe that the person's mindset can be a defense to reckless conduct." Tr. p. 571.

Our Supreme Court has determined that a claim of self-defense "includes both subjective and objective components." *Littler v. State*, 871 N.E.2d 276, 279 (Ind. 2007). Specifically, one must demonstrate a "subjective belief that force was necessary to prevent serious bodily injury [ ] and that such actual belief was one that a reasonable person would have under the circumstances." *Id.* Here, Huls' Instruction 3 and Instruction 4 unduly emphasized that the validity of the use of force in self-defense "can only be determined from the standpoint of the accused" without also instructing them to equally consider whether Huls' belief was objectively reasonable under the

9

circumstances.  Therefore, his proposed instructions incorrectly stated the law on self-defense, and the trial court did not abuse its discretion by refusing them.

Huls also tendered a proposed jury instruction on the defense of mistake of fact, which provided:

> It is a defense that the defendant was reasonably mistaken about a matter of fact if that mistake caused the defendant to commit the offense with which he is charged.  The state has the burden of proving beyond a reasonable doubt that the defendant was not reasonably mistaken.

Appellant's App. p. 67.  The trial court refused this instruction without explanation.

A defendant is entitled to an instruction on any defense which has some foundation in the evidence.  *Potter v. State*, 684 N.E.2d 1127, 1135 (Ind. 1997).  In determining whether the evidence required an instruction upon a defense of mistake of fact, we consider whether the evidence relevant to it, if believed, could have created a reasonable doubt in the jury's mind that the accused had acted with the requisite mental state.  *Stoner v. State*, 442 N.E.2d 983, 985 (Ind. 1982).

Huls argues that he was entitled to a mistake of fact instruction because he presented evidence that he believed someone was on his property and was coming toward him.  Although this evidence was presented to the jury, it could not have created a reasonable doubt as to whether Huls acted recklessly, the minimum level of culpability required for the offense of criminal recklessness.  *See* Ind. Code § 35-42-2-2.  A person engages in conduct recklessly if he or she engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.  Ind. Code § 35-41-2-2 (1977).  It is not

10

an acceptable standard of conduct to fire a handgun into the night without determining who is there or whether the person poses a threat. *See Nordstrom v. State*, 627 N.E.2d 1380, 1383 (Ind. Ct. App. 1994) (determining that even if Nordstrom genuinely believed that his gun would not fire without a clip inserted, it was inherently reckless for him to point the gun at his wife and pull the trigger under any circumstances, so his belief did not negate the culpability for reckless homicide), *trans. denied*. The evidence does not support the giving of Huls' proposed jury instruction on mistake of fact; thus, the trial court did not abuse its discretion by rejecting the instruction.

## III. SUFFICIENCY OF THE EVIDENCE

Huls argues that the State failed to rebut his claim of self-defense. The State contends that the jury's verdict is supported by the evidence.

When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Id.* at 801. We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

A valid claim of defense of oneself, another person, or one's property is legal justification for an otherwise criminal act. *Id.* at 800. Pursuant to the governing statute:

A person:

11

> (1) is justified in using reasonable force, including deadly force, against any other person; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle.

Ind. Code § 35-41-3-2(d) (2006). Nevertheless, a defendant is not justified in using force if "the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." Ind. Code § 35-41-3-2(g)(3). Thus, in order to prevail on a claim of self-defense, the defendant must show that he or she: (1) was in a place where he or she had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson*, 770 N.E.2d at 800. Furthermore, an initial aggressor must withdraw from the encounter and communicate the intent to do so to the other person before he or she may claim self-defense. *Tharpe v. State*, 955 N.E.2d 836, 844 (Ind. Ct. App. 2011), *trans. denied*.

Here, Huls contends that the evidence establishes that he shot at the teenagers because he believed it necessary to protect himself and his property. We disagree. Two of the teenagers stated that they never entered his property. Furthermore, the police found a hat belonging to one of the teenagers in the wooded area next to Huls' property rather than on Huls' property. In any event, Huls opened fire without identifying his target, and after he opened fire he did not attempt to end the encounter and communicate

12

his intent to do so, in violation of the statute. *See* Ind. Code § 35-41-3-2(g)(3). To the contrary, Huls continued to shoot even after C.M. shouted at Huls to stop firing and stated that he and his companions were leaving. Thus, the evidence demonstrates that Huls instigated and participated in the violence, and the State carried its burden of negating Huls' claim of self-defense.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BAKER, J., and MAY, J., concur.