# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ERNEST P. GALOS**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 21 2013, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CURTIS TYRELL CUTLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1206-CR-339 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1107-FB-339

**February 21, 2013**

**OPINION - FOR PUBLICATION**

**SHEPARD, Senior Judge**

A few weeks after the effective date of Indiana's new rule requiring that custodial interrogations be recorded as a condition of admissibility, appellant Curtis Tyrell Cutler broke into Tymesha Coleman's home and stole her television, her computer, and the like.

The question Cutler's appeal presents is whether the State may impeach a testifying defendant by using a prior custodial statement that was indeed recorded but was not "available at trial" as required by Evidence Rule 617 because neither defense counsel nor the prosecutor knew of its existence until trial was under way.

We conclude that the trial court did not err in permitting use of the statement for impeachment, and affirm the conviction.

FACTS AND PROCEDURAL HISTORY

When Tymesha Coleman returned home on January 23, 2011, she discovered that someone had pried open her back door and rummaged through the house, absconding with various electronics, her checkbook, her Social Security card, and so on. She called the South Bend Police Department, whose responding officers recorded the scene and took samples of blood found on a freezer just inside the back door and on the cable cord that had been unscrewed from the missing television. There was also blood on parts of the pried door and on its handle and lock. The police sent some of these samples for DNA analysis, which later indicated that the blood belonged to Cutler.

After receiving these results, the police questioned Cutler, who said he did not know Tymesha Coleman and had no idea how his DNA could have been found in her home. Tr. pp. 97-98.

2

The State charged Cutler with burglary, a class B felony, Ind. Code § 35-43-2-1 (1999). A jury found him guilty as charged. Judge Jane Woodward Miller sentenced Cutler to twelve years executed time, it being his second burglary conviction.

## ISSUES

Cutler presents two issues on appeal: (1) whether the trial court erred by permitting the State to impeach him with evidence from his interrogation, and (2) whether the evidence was sufficient to sustain the conviction.

## DISCUSSION AND DECISION

### I. Does Evidence Rule 617 Require Reversal?

Cutler's appeal presents an issue of first impression concerning Indiana's new rule about the admissibility of custodial statements. The rule provides, in part: "In a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved, and is available at trial . . . ." Ind. Evidence Rule 617(a).

The applicability of Rule 617 arose at trial not during the State's case in chief, but rather after Cutler took the witness stand in his own defense. As will be described in more detail later, the thrust of Cutler's trial testimony was that he had once visited Coleman's home and thus come to touch various objects, leaving his blood behind. He explained, for example, that he had exited the house as the result of an argument, then

3

forced his way back inside through the kitchen door, cutting himself in the process. "That's how your blood got there?" asked his lawyer. "Right," he answered. Tr. p. 75.

In the course of the State's cross-examination, the prosecutor sought to confront Cutler with the statement he had given in July 2011, during which he denied knowing Coleman, denied knowing where she lived, and said he could not explain how his DNA came to be in the residence. Defense counsel objected, saying that he had not received any electronic recording of the interview, only a written police report describing it, and thought there had not been a recording. *Id.* at 90.

The trial court invited the jury to depart the courtroom, upon which the judge and counsel examined Rule 617 and other resources such as Robert L. Miller's *Indiana Evidence*. Counsel made inquiry of the South Bend Police Department, which promptly reported that there was in fact a recording made of the Cutler interview. The prosecutor appears to have had in his file only the same thing defense counsel had – a written report of the interrogating officer. Tr. pp. 90, 95.

Though the prosecutor and defense counsel parried over whether the defense should have demanded production of any recording in advance of trial, the court correctly observed that Rule 617 does not impose any such burden on a defendant. *Id.* at 91. The Attorney General acknowledges on appeal that the local rule on discovery obliged the prosecution to disclose to the defense any written or recorded statement by the defendant. Appellee's Br. p. 8.

4

The trial court overruled Cutler's objection, noting that even a statement taken in violation of *Miranda v. Arizona* may be used at trial against a testifying defendant. "The theory being," said the trial judge, "that if a defendant chooses to take the stand he can't be insulated from his prior statements and that those statements can be used for impeachment purposes only." Tr. p. 96. The Indiana Supreme Court has recognized this principle, citing the U.S. Supreme Court. *Page v. State*, 689 N.E.2d 707, 710 (Ind. 1997) (citing *Harris v. New York*, 401 U.S. 222, 225-26, 91 S. Ct. 643, 645-46, 28 L. Ed. 2d 1, 4-5 (1971)) ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances."). In accord with these authorities, the trial court promptly instructed the jury that the statements from Cutler's interrogation could be considered "if at all, solely in evaluating his credibility as a witness." Tr. p. 99.

Had the State attempted to use Cutler's statement from July as substantive evidence, Rule 617 would surely have required the prosecution to produce the recording before evidence of the statement could be admitted. Indeed, it seems that under the spirit of Rule 617, the defense would have been within its rights to insist on hearing the recording before the prosecutor could confront Cutler with his statements, even given the late moment at which counsel and the court became aware of its existence.

Still, it is difficult to see defense counsel's failure to make such a request as constituting waiver. To the State's credit, the Attorney General has not argued that it was.

Thus, on the main point at issue, we conclude that the principle recognized in *Page* and *Harris v. New York* applies. There appear not to have been any appellate decisions elsewhere in the country on the precise issue raised by Cutler. We do note that courts and legislatures in several states have enacted recording requirements. Some of these explicitly authorize use of custodial statements in circumstances similar to Cutler's,[1] and others are silent on the point.[2]

The court did not err in overruling Cutler's objection.

## II. Was There Sufficient Evidence to Convict?

The evidence favorable to the jury's verdict indicated that Cutler had been in Tymesha Coleman's home during an evening in early January 2011. Coleman testified that her friend Natasha Winston was present that evening and that Cutler came to the house to visit Natasha for "no longer than maybe an hour to two hours." Tr. pp. 35-36. Winston testified that she had asked ahead of time whether it was all right to invite Cutler and Coleman had agreed. "We just watched a couple of movies and hung out," said Winston. *Id.* at 45-46. She said Cutler was there for about two hours and then left. *Id.* at 47.

As indicated above, the State's evidence about Cutler's participation in the January 23rd burglary centered on DNA results indicating that the blood on the freezer in

---

[1] *See* Ill. Comp. Stat. 5/103-2.1(e) (2005) (mandating recording of custodial interrogations as a condition for admissibility of statements resulting from interrogation but nonetheless permitting admission of a voluntary, unrecorded statement if it "has a bearing on the credibility of the accused as a witness"); Tex. Criminal Code Ann. Art. 38.22(5) (2001) (same).

[2] New Jersey Court Rule 3:17.

6

the kitchen and on the television cables belonged to Cutler. The parties stipulated to these test results. *Id.* at 11-12.

Cutler testified that he and his friend James Felix had been in the house on that evening in January. He explained his response in July by saying he had been introduced to Coleman only as "Tee Tee" or "Tee" and thus did not know who the interrogating officer was referring to. He also said he had been asked whether he had been to a particular address, and did not know the actual address he had visited. *Id.* at 100.

He said that during his visit to Coleman's he and Natasha Winston fell to arguing, that he and Felix went outside through the kitchen to cool off, and that Winston had locked the door behind them. *Id.* at 71-78. Cutler said that in seeking to re-enter, he broke the screen door, pushed open the back door with his body, cut himself in the process, and brushed up against the kitchen freezer on his way back in. *Id.* at 75. He said his blood came to be on the television cable when he went over to unscrew it, being disturbed that Natasha Winston was paying more attention to the television than to him. *Id.* at 76. He denied committing the burglary.

Counsel for Cutler urges that Cutler presented a plausible explanation for having been once present in Coleman's home, adding that none of the items stolen on January 23rd were ever recovered from him or traced to him. Appellant's Br. p. 16.

Of course, it is not for a court on appeal to determine what elements of the evidence warrant acceptance. Rather, we affirm the verdict if there was before the jury substantial evidence of probative value to support it. *Minter v. State*, 653 N.E.2d 1382

7

(Ind. 1995).  We conclude there was sufficient evidence to warrant a jury in finding beyond a reasonable doubt that Cutler committed the burglary.

## CONCLUSION

We affirm the judgment of the trial court.

FRIEDLANDER, J., and BRADFORD, J., concur.