Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 24 2013, 6:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BETH McFADIN HIGGINS**
McFadin Higgins & Folz, LLP
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MICHAEL SIMPSON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 65A04-1210-CR-555 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE POSEY CIRCUIT COURT
The Honorable James M. Redwine, Judge
Cause No. 65C01-1109-FC-446

**July 24, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

1

Michael Simpson ("Simpson") was convicted in Posey Circuit Court of Class C felony child molesting. Simpson appeals and argues: (1) that the trial court erred in its instruction to the jury on the legal effect of voluntary intoxication and (2) that the evidence is insufficient to support his conviction for child molesting.

We affirm.

## Facts and Procedural History

Simpson is the paternal uncle of I.D.S. On Friday, March 25, 2011, eight-year-old I.D.S. visited with her father, Timothy Simpson ("Father"), and younger sister, V.S., at a mobile home occupied by Simpson in Posey County, Indiana. I.D.S.'s mother and father are divorced.

Simpson, Father, I.D.S., and V.S. spent the evening of March 25 eating pizza for dinner and watching movies in the living room of Simpson's mobile home. Over the course of the evening, Simpson consumed six to twelve beers and one mixed drink. Father was the first of the group to leave the living room and go to sleep in the bedroom adjacent to the living room. He slept until 10 a.m. the following morning. Shortly after Father retired, Simpson put V.S. to bed with Father, where she remained for the rest of the night.

On Simpson's suggestion, I.D.S. went to bed in Simpson's bedroom, which was located at the end of the mobile home opposite the living room and the bedroom in which Father and V.S. slept. Simpson joined her. I.D.S. was clothed and Simpson wore only boxer shorts. Instead of going to sleep immediately, I.D.S. and Simpson reclined on the bed and watched a movie on the television located in that bedroom.

2

Shortly after they began the movie, Simpson reached underneath I.D.S.'s shirt and unfastened her bra in the back. I.D.S. told Simpson to refasten the bra, which he did. Simpson then placed his hand on I.D.S.'s breast, over her clothing and "rubbed" her breast for "[m]aybe a minute." Tr. pp. 86-87. I.D.S. told Simpson to stop. After that, Simpson "rubbed over [her] vagina" for "[m]aybe fifty seconds." Tr. pp. 87-88. Again, I.D.S. told Simpson to stop and to stay on his side of the bed. Simpson responded, "[t]hat's very hard." Tr. p. 88. At some point, Simpson asked I.D.S. to remove her clothing and she refused. Eventually, Simpson fell asleep. I.D.S. "made sure he went to sleep before [she] went to sleep." Tr. p. 88. I.D.S. woke around noon the next day, Saturday, March 26. She, her sister, and her father left the mobile home shortly thereafter.

When I.D.S. returned to her mother's house Sunday evening, she reported the incident to her mother. As she described the touching, I.D.S. was crying and shaking. I.D.S.'s mother called the Department of Child Services, who arranged for I.D.S. to be interviewed by a child forensic interviewer at Holly's House, a child advocacy center. The interviewer observed that I.D.S. did not appear to have been coached to make any statement other than one based on her own memory.

On April 8, 2011, Indiana State Police troopers interviewed Simpson. Simpson reported to the police interrogating him that he had been drinking heavily the night of the touching and that he was "sure [his] faculties were clouded." Appellant's App. p. 135. Simpson told the officers that he remembered going into the bedroom, he remembered I.D.S. going into the bedroom with him, and he remembered the two of them getting into

3

bed.  He also remembered watching the movie Ghost on the bedroom television.  He said that he "vaguely remember[ed]" I.D.S. asking him to rub her back.  Id.  He stated that he did not remember unfastening I.D.S.'s bra or putting his hand on I.D.S.'s vagina.  Simpson admitted that he might have committed the touching "by accident, perhaps, or in my sleep perhaps[.]"  Id. at 136.

On September 1, 2011, a grand jury indicted Simpson for child molestation.  Simpson pleaded not guilty.  During the two-day August 2012 jury trial in the Posey Circuit Court, the State tendered Indiana Pattern Jury Instruction 10.09, which reads, "[v]oluntary intoxication is not a defense to the charge of Child Molesting.  You may not take voluntary intoxication into consideration in determining whether Mr. Simpson acted knowingly or intentionally as alleged in the charge."  Tr. p. 119.  Simpson objected to the voluntary intoxication instruction, arguing that it impermissibly constrained the jury's right to judge the law and facts, unlawfully lessened the State's burden of proof, and violated Simpson's right to bring a defense on the intent element of the charged crime.  Over Simpson's objection, the trial court granted the State's jury instruction request and delivered the voluntary intoxication instruction to the jury.  The jury found Simpson to be guilty as charged.

Simpson now appeals and seeks reversal of his conviction.

### I. Tendered Jury Instruction

Simpson argues that the trial court abused its discretion in its instruction to the jury regarding voluntary intoxication.  Specifically, Simpson contends that the trial court's jury instruction on voluntary intoxication violated Article 1, Section 19 of the

4

Indiana Constitution [1] because the instruction impermissibly restricted the jury's discretion to consider evidence of voluntary intoxication and its effect on the requisite mens rea of the charged crime.

The purpose of a jury instruction is to "inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Wilson v. State, 842 N.E.2d 443, 445 (Ind. Ct. App. 2006) (quoting Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003)). Instruction of the jury generally lies "within the trial court's sound discretion" and we review the trial court's giving of a tendered instruction for abuse of discretion. Huls v. State, 971 N.E.2d 739, 745 (Ind. Ct. App. 2012), trans. denied.

When we review a trial court's decision to give a tendered jury instruction, we consider "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given." Id. Unless an instruction is erroneous, misstates the law, or misleads the jury, we will find no abuse of discretion. O'Connell v. State, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012).

Indiana's voluntary intoxication statute provides that "[i]ntoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense[.]" Ind. Code § 35-41-2-5. Simpson claims that the phrase "taken into consideration" prohibits consideration of evidence of intoxication only where the defendant raises a specific

---

[1] Article 1, Section 9 of the Indiana Constitution reads, "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts."

defense of voluntary intoxication. He argues that the instruction to disregard evidence of intoxication when determining whether the touching was knowing or intentional is "to prejudice [his] substantial rights[.]" Appellant's Br. at 7.

We do not find this argument persuasive. Our supreme court directly addressed the issue in Sanchez v. State, where it held:

> The voluntary intoxication instruction does not unconstitutionally compel the jury to make a finding of intent. In effect, it provides that the crime is committed if it is done with the requisite mens rea or as a result of voluntary intoxication. This statutory scheme does not violate either the federal constitution or the jury's ability to determine "the law and the facts."

Sanchez v. State, 749 N.E.2d 509, 521 (Ind. 2001) (quoting Ind. Const. art. 1, § 19).

In other words, even where intoxication renders a criminal act involuntary, Indiana statute provides that voluntary intoxication itself "supplies the general requirement of a voluntary act." Schlatter v. State, 891 N.E.2d 1139, 1143 (Ind. Ct. App. 2008) (quoting Sanchez, 749 N.E.2d at 517). Thus, a jury instruction that forbids the jury from considering evidence of voluntary intoxication when determining whether a crime's mens rea requirement is met is constitutionally permissible.

Indiana Code section 35-41-2-5 "does not necessarily proscribe [all] evidence of the defendant's use of alcohol or drugs." Sanchez v. State, 749 N.E.2d at 519-20. Such evidence "may be admissible as general background, or as relevant to something other than lack of mens rea, e.g., identity." Id. Here, the jury instruction at issue did not prohibit the jury from considering evidence of Simpson's intoxication for all purposes. It merely instructed that the jury could not consider evidence of the defendant's intoxication

when determining "whether Mr. Simpson acted knowingly or intentionally."[2] This instruction is consistent with Indiana Code section 35-41-2-5, the Indiana Supreme Court's holding in Sanchez, and Article 1, Section 19 of the Indiana Constitution. Thus, the trial court did not abuse its discretion in delivering the instruction.

## II. Sufficiency of Evidence

Simpson also argues that the evidence presented at trial was insufficient to support his conviction for child molestation. Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor assess the credibility of witnesses. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). Instead, we look to the evidence and the reasonable inferences that may be drawn from it that support the verdict. Boggs v. State, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), trans. denied. The verdict will not be disturbed so long as there is substantial evidence of probative value that sustains it. Cutler v. State, 983 N.E.2d 217, 221 (Ind. Ct. App. 2013).

To convict Simpson of child molestation, the State was required to prove that Simpson fondled or touched I.D.S., a child under fourteen years of age, with the intent to "arouse or to satisfy the sexual desires" of either I.D.S. or himself. Ind. Code § 35-42-4-3. Simpson argues that the evidence was insufficient to establish that he touched I.D.S. with the intent to arouse or satisfy sexual desires. He points to I.D.S.'s testimony that, on the night of the touching, Simpson did not remove his clothing, did not reveal his genitals, and was not "doing anything strange to his body." Tr. pp. 104, 107.

---

[2] The jury was instructed, "[v]oluntary intoxication is not a defense to the charge of Child Molesting. You may not take voluntary intoxication into consideration in determining whether Mr. Simpson acted knowingly or intentionally as alleged in the charge." Tr. p. 119; Appellant's App. p. 77.

7

Simpson further notes that "[m]ere touching alone is not sufficient to constitute the crime of child molesting." Appellant's Br. at 9 (citing Kanady v. State, 810 N.E.2d 1068 (Ind. Ct. App. 2004)). He also points to Markiton v. State, where our supreme court found that evidence of the defendant's casual, innocent, and playful contact with a child's breast while tucking the child into bed was insufficient to prove intent to arouse or satisfy sexual desires. 236 Ind. 232, 235, 139 N.E.2d 440, 441 (1957).

Intent to molest may be established by circumstantial evidence and may be inferred from the defendant's conduct and "the natural and usual sequence to which such conduct usually points." Davis v. State, 956 N.E.2d 726, 730 (Ind. Ct. App. 2011) trans. denied (quoting Pedrick v. State, 593 N.E.2d 1213, 1220 (Ind. Ct. App. 1992)). For example, this court has found sufficient evidence of child molestation where the defendant, a physical education teacher, rubbed minor students' breasts during class activities and placed his hand on one student's lower abdomen, and also where the defendant touched a different student's breasts over her t-shirt eight to twelve times. Pedrick, 593 N.E.2d at 1220; Cruz Angeles v. State, 751 N.E.2d 790, 798 (Ind. Ct. App. 2001). In this regard, it is important to remember that a minor victim's uncorroborated testimony is sufficient to sustain a conviction of child molesting. Feyka v. State, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012) trans. denied.

The evidence before us is distinguishable from that in Markiton, where the court found that the contact at issue was too ambiguous to justify an inference of intent to arouse or satisfy sexual desires. Here, as in Pedrick and Cruz Angeles, evidence of Simpson's conduct supports an inference that he touched I.D.S. with intent to arouse or

8

satisfy sexual desires. I.D.S. testified that Simpson unfastened her bra, rubbed her breasts over her clothing for nearly a minute, placed his hand on her vagina over her clothing for nearly a minute, and asked her to remove her clothing. This contact was unambiguous. This testimony and the attendant facts and circumstances sufficiently support Simpson's conviction for child molesting.

### Conclusion

The trial court did not abuse its discretion in its instruction to the jury on the legal effect of Simpson's voluntary intoxication. The State also presented sufficient evidence to prove that Simpson touched a child under fourteen years of age with the intent to arouse or to satisfy the sexual desires of either the child or himself.

Affirmed.

BAKER, J., and MAY, J., concur.

9