**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 17 2013, 5:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**COREY L. SCOTT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| DARRAIL MIX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-314 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Helen W. Marchal, Judge
Cause No. 49G16-1208-FD-55714

**October 17, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Defendant-Appellant, Darrail Mix (Mix), appeals his conviction for domestic battery, a Class D felony, Ind. Code § 35-42-2-1.3(a)-(b); battery, a Class D felony, I.C. § 35-42-2-1(a)(2); domestic battery, a Class A misdemeanor, I.C. § 35-42-2-1.3(a); and resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(1).

We affirm.

## ISSUE

Mix raises two issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to support Mix's conviction for domestic battery and battery; and

(2) Whether the trial court abused its discretion by failing to give the jury a self-defense instruction.

## FACTS AND PROCEDURAL HISTORY

Mix and A.J. were in a relationship for six years, punctuated with periods where they had broken up. Together, they have one child, and A.J. has two additional children. On August 12, 2012, Mix and A.J., having recently reconciled their relationship, attended their son's fourth birthday party together. Mix and A.J., along with the three children—who were then ages five, four, and one—drove to a nearby park for the party. They had a nice time at the celebration, and when it was time to leave, "everybody was happy." (Tr. p. 43). After the party, A.J. drove Mix and the children back to her apartment. The mood changed during the ride though, and "[f]or no apparent reason [Mix] started arguing with

2

[A.J.]." (Tr. p. 43). Once they reached the parking lot of A.J.'s apartment, A.J. exited the car and was preparing to get the children out of the vehicle, when Mix, whose anger had continued to escalate, walked around to the driver's side of the vehicle. Now "[l]ess than two feet" away and "directly in front of" A.J., Mix punched her on the left side of her face. (Tr. p. 28). With the children still in the car, A.J. took off running as Mix chased her in circles around the vehicle. In the midst of this episode, A.J. managed to call the Indianapolis Metropolitan Police Department (IMPD).

Three members of the Indianapolis Fire Department (Firefighters) were the first to respond to the dispatch. Upon their arrival, Mix began walking away from the parking lot. Firefighter Clarence Small (Firefighter Small) observed A.J. standing outside, looking distressed. He approached and "asked her if she was okay." (Tr. p. 67). A.J. answered, "[N]o he hit me in the eye[,]" but before Firefighter Small could ask additional questions or inspect A.J.'s injuries, Mix—who was approximately fifty feet away—reeled around and proceeded toward the group. (Tr. p. 67). As Mix neared, he screamed profanities and threatened violence against the Firefighters and A.J., and the Firefighters took "a defensive stance to help protect [A.J.] and protect [them]selves." (Tr. p. 96).

When Mix reached the sidewalk where A.J. and the Firefighters were standing, he lunged at Firefighter Small as though he was going to hit him but did not make physical contact. A few seconds passed, and Firefighter Small, believing Mix was not going to hit him, relaxed his stance. As soon as Firefighter Small "let [his] guard down[,]"Mix "sucker punched" him in the jaw. (Tr. p. 70). Firefighter Small's lip bled due to "tearing of the soft tissue." (Tr. p. 71). The "skin on the inside of [Firefighter Small's] lip was pushed in

3

between [his] teeth[,]" and he had "to work it so it came out finally because it was stuck inside there." (Tr, p. 71).

After the punch, the Firefighters backed away from Mix, and A.J. retreated with the children inside her apartment to watch from the window. Mix then followed the Firefighters to the fire engine, continuing with his erratic behavior. After several minutes of Mix chasing and trying to fight them, the Firefighters collectively rushed Mix, grabbed him, and "[took] him down to the ground" where they struggled to restrain him while waiting for the police. (Tr. p. 98). Mix "tried several times to roll over to kick at [the Firefighters], spitting at [them], trying to get up." (Tr. p. 100). After the first IMPD Officer arrived and handcuffed Mix, Mix continued "fighting with them, kicking, trying to get up, cussing at them, [and] just being belligerent[,]" so the IMPD Officer and the Firefighters used soft restraints to tie around Mix's ankles. (Tr. p. 115).

After detaining Mix, IMPD Officers entered A.J.'s apartment to discuss the incident. They photographed A.J.'s eye, but she declined medical attention, stating that "[Mix] had just hit me. So when they got there it was just like puffy and I didn't think it was that bad. It was just like puffy, like watery." (Tr. p. 55). An IMPD Officer gave A.J. an ice pack to put on her eye, and when she "woke up in the morning . . . it was swollen shut." (Tr. p. 52). A few days later a victim's advocate from the prosecutor's office took additional photographs of A.J.'s eye, which had developed a bruise. (State's Exhibits. 1-3).

On August 13, 2012, the State filed an Information, charging Mix with Count I, domestic battery, a Class D felony, I.C. § 35-42-2-1.3(a)-(b); Count II, battery, a Class D felony, I.C. § 35-42-2-1(a)(2)(M); Count III, battery, a Class D felony, I.C. § 35-42-2-

4

1(a)(2)(K); Count IV, domestic battery, a Class A misdemeanor, I.C. § 35-42-2-1.3(a); Count V, battery, a Class A misdemeanor, I.C. § 35-42-2-1(a)(1)(A); Count VI, battery, a Class A misdemeanor, I.C. § 35-42-2-1(a)(1)(D); and Count VII, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(1). On February 14, 2013, the State dismissed Counts II, V, and VI.

On February 20, 2013, a jury trial was conducted, and at the close of the evidence, the jury returned a verdict of guilty as to the four remaining Counts. On March 11, 2013, the trial court merged the Class A misdemeanor domestic battery Count into the Class D felony domestic battery Count and sentenced Mix to a term of four years—730 days for domestic battery and 730 days for battery, to be served consecutively. The trial court also imposed a concurrent sentence of 365 days for resisting law enforcement.

Mix now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Sufficiency of the Evidence*

Mix contends that the evidence is insufficient to sustain his conviction for two Counts of domestic battery and one Count of battery. In reviewing whether there is sufficient evidence to support a conviction, this court will "consider only the probative evidence and reasonable inferences supporting the verdict." *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied.* This court neither reweighs the evidence nor assesses witness credibility, and will "consider conflicting evidence most favorably to the trial court's ruling." *Id.* We will uphold the conviction unless "no reasonable fact-finder

5

could find the elements of the crime proven beyond a reasonable doubt." *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000).

Mix was convicted of two Counts of domestic battery—one as a Class D felony and the other as a Class A misdemeanor—for punching A.J. in the eye. Under Indiana's domestic battery statute, "[a] person who knowingly or intentionally touches an individual who . . . has a child in common with the other person[] in a rude, insolent, or angry manner that results in bodily injury to the person . . . commits domestic battery, a Class A misdemeanor." I.C. § 35-42-2-1.3(a)(3). The same offense is elevated to a Class D felony if committed "in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." I.C. § 35-42-2-1.3(b)(2). Mix does not contest that he and A.J. have a child together. Accordingly, in order to convict Mix of a Class D felony, the State was required to prove that he (1) knowingly or intentionally; (2) touched A.J.; (3) in a rude, insolent, or angry manner; (4) resulting in bodily injury to A.J.; (5) in the presence of a child.

Mix first disputes the sufficiency of evidence proving that he committed the battery in the presence of the children. He argues that "[t]here were no third-party eyewitnesses to the alleged altercation"—or none who "testified in court at trial or gave statements to IMPD Officers"—and that A.J. "didn't allow her kids to make statements on the date of the alleged incident or at trial because she didn't want to 'drag her kids through something like [that].'" (Appellant's Br. p. 4). Mix further argues that "the [F]irefighters, who arrived on the scene first, testified that they . . . did not see any children outside." (Appellant's Br. p. 4). The evidence establishes that the argument began during the car-ride home from the

6

birthday party, and Mix punched A.J. right after she had parked and exited the car while the children were still in the back seat. Additionally, in the recording of A.J.'s call to 911, which she made in the course of Mix chasing her around the vehicle, she can be heard telling Mix to "stay away from my son." (Tr. p. 40). Contrary to Mix's assertion, the Firefighters testified that when they arrived on the scene, they had only a very brief interaction with A.J. before their attention became fully devoted to Mix's tantrum and, thus, did not "remember seeing children . . . [r]ight away." (Tr. p. 83). The Firefighters' statements are consistent with A.J.'s testimony that she grabbed the children and took them inside after Mix punched Firefighter Small. Both testified that they did not see where A.J. had gone at that point, one stating that "after my focus was directed towards [Mix] I didn't see much of her at all[,]" and the other that "I was too busy trying to keep [Mix] off of me." (Tr. pp. 73, 108). Accordingly, we find that the State presented sufficient evidence to establish that the children were in the back seat and capable of seeing or hearing Mix punch A.J.

Second, Mix claims the evidence is insufficient to establish that he caused bodily injury to A.J. Specifically, Mix argues that the Firefighters testified that they observed no injuries on A.J. the night of the incident, and also that

> the State did not seek to introduce any photographic evidence that was supposedly collected on the night of the incident. Instead, the State introduced photographs that were taken a few days after the alleged incident. So that means that the photos relied upon by the State in its case in chief[] could have very well been the result of some other violent event that occurred after Mix was arrested.

7

(Appellant's Br. p. 5). The State's evidence to establish bodily injury includes three pictures of a bruise encircling A.J.'s left eye; A.J.'s testimony that Mix punched her one time on the left side of her face, which resulted in initial swelling and subsequently bruised; and testimony of the IMPD Officer that, on the night of the incident, he observed "some swelling and redness" on A.J.'s left eye. (Tr. pp. 119-20). Mix's assertion that the Firefighters testified that they perceived no injuries, while *technically* correct, omits a significant portion of the Firefighters' testimony: they did not have an opportunity to examine A.J.'s injuries before Mix interfered.

Our supreme court has previously established that "[a] conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). Here, A.J.'s testimony *was* corroborated by the IMPD Officer, as well as Firefighter Small, who testified that A.J.'s injuries would not have been readily apparent because with "dark skinned people, it's hard to see . . . if there [are] any marks or anything like that. . . . It takes a while sometimes . . . for the swelling to come up." (Tr. p. 83-84). Furthermore, the jury, although aware that the photographs admitted into evidence had been taken several days after the incident, believed A.J.'s testimony that her black eye was the result of Mix punching her, and it is not the role of this court to assess a witness's credibility. *See Feyka v. State*, 972 N.E.2d 387, 392-94 (Ind. Ct. App. 2012), *review denied*. Thus, we find that the State presented sufficient evidence to establish that Mix inflicted bodily injury on A.J.

Mix's remaining claims do not contend that the State failed to meet its burden on any particular element of domestic battery. Instead, Mix makes general assertions

8

challenging the credibility of A.J.'s testimony. Specifically, Mix argues, "Then incredibly, in the same breath, [A.J.] testified that while she was being chased around the car by Mix, she was able to: grab her kids out of the car, call 911 to seek help and occasionally stop to argue with Mix." (Appellant's Br. pp. 4-5). Mix also states,

> So according to [A.J.], after her son's birthday party, all was well and then without provocation, Mix gets out of the car and punches her in the face. When asked whether she actually started the argument with Mix because he was seeing other women, [A.J.] denied that there was any issue at all before she was punched.

(Appellant's Br. p. 5). It is well-established that it is "the jury's responsibility to judge the credibility of witnesses." *Manuel v. State*, 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012). An examination of the record reveals that each witness's testimony was corroborated, as well as that Mix's unprovoked attack upon Firefighter Small—and the manner in which he chased the Firefighters around the fire engine—is strikingly similar to A.J.'s account of Mix's behavior towards her. Accordingly, we decline Mix's request to interfere with the jury's credibility determination.

We find that the State presented sufficient evidence to support Mix's conviction for domestic battery, a Class D felony, and because the elements of domestic battery as a Class A misdemeanor are the same, less that the battery was committed in the presence of children, the evidence is also sufficient to uphold this Count.[1]

## II. *Self-Defense Instruction*

---

[1] Despite Mix's challenge to his conviction for battery against Firefighter Small, a Class D felony, Mix has not set forth even a single argument concerning the sufficiency of the evidence of this conviction. By failing to present his "contentions [on] why the trial court . . . committed reversible error . . . , supported by cogent reasoning[,]" Mix has waived this issue for review under Indiana Appellate Rule 46(A)(8)(a). *See In re Garrard*, 985 N.E.2d 1097, 1104 (Ind. Ct. App. 2013).

Mix next contends that the trial court abused its discretion by refusing to present "a self-defense instruction to the jury given that such an instruction would be totally supported by the evidence and the instruction was not covered by any other jury instruction tendered to the court." (Appellant's Br. p. 7). A trial court has sound discretion over the manner in which it instructs the jury, and this court will review a trial court's decision to refuse tendered jury instructions only for an abuse of discretion. *Huls v. State*, 971 N.E.2d 739, 744-45 (Ind. Ct. App. 2012), *trans. denied*. To determine whether the trial court abused its discretion, we consider "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given." *Id.* at 745. Even if a trial court abuses its discretion "in refusing to give an instruction, such a refusal 'is not presumed fatal and will constitute reversible error only when substantial rights have been adversely affected.'" *Bailey v. State Farm Mut. Auto. Ins. Co.*, 881 N.E.2d 996, 1005 (Ind. Ct. App. 2008).

Mix's counsel submitted a self-defense instruction to the trial court, which the trial court rejected because there was not "sufficient evidence to support the giving of that particular instruction." (Tr. p. 145). "A defendant is entitled to an instruction on any defense which has *some foundation* in the evidence." *Huls*, 971 N.E.2d at 746 (emphasis added). Regrettably, here, Mix has obstructed our ability to review this issue because he neglected to reproduce the tendered instruction in either the Appellant's Brief or the Appellant's Appendix. "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief

10

with the verbatim objections, if any, made thereto." Indiana Appellate Rule 46(A)(8)(e); *see* App. R. 50(B)(1)(c). "An appellant waives the issue by failing to comply with this appellate rule." *Watson v. State*, 972 N.E.2d 378, 383 n.2 (Ind. Ct. App. 2012).

We are thus inclined to find that Mix has waived this issue. The State, in its brief, put Mix on notice that the tendered instruction was improperly excluded from the record, but Mix made no effort to remedy the error by filing a reply brief or supplementing the appendix. *See Dellenbach v. State*, 508 N.E.2d 1309, 1316 (Ind. Ct. App. 1987). Notwithstanding both Mix's waiver and unconcern with supplementing the record, in this instance, the trial transcript captured the discussion relevant to Mix's self-defense instruction. Therefore, Mix's failure to provide this court with a verbatim copy of the tendered instruction has not completely impeded our consideration of the issue, although it certainly would have alleviated us of the burden of searching the record had Mix, at the very least, provided citations to the transcript. Thus, to the extent we are able, we will review whether the trial court erred in rejecting Mix's self-defense instruction.

The trial court agreed that, although the instruction would not be submitted to the jury, Mix's attorney could still present the issue to the jury during closing arguments. Reading from Indiana Code section 35-41-3-2(i)-(j), the attorney stated in his closing,

> [A] person is justified in using reasonable force against a public servant if that person reasonably believes that force is necessary to protect that person or a third person from what that person reasonably believes to be the imminent use of unlawful force. The person is unjustified in using such force if that person is committing or escaping from a crime, pro[v]o[k]ing action from a public servant with the intent to cause that bodily injury to the servant, entering into mutual combat with the public servant or becomes the initial aggressor[,] unless that person withdraws from the encounter and indicates his peaceful intent and the other person continues to fight.

11

(Tr. pp. 172-73). Assuming that Mix's tendered instruction replicates this argument, we agree that it is a correct statement of the law, and because Firefighter Small is a paid employee of the Indianapolis Fire Department, he meets the statutory definition of a "[p]ublic servant." I.C. § 35-31.5-2-261. We also agree that the issue of self-defense was not covered by any other final jury instruction. However, we find no evidence in the record that supports a basis for providing *any* such self-defense instruction to the jury. The Firefighters arrived in response to a call for help; they had no interaction with Mix and very little time to assess the situation before Mix *approached them* and "sucker punched" Firefighter Small in the jaw (Tr. p. 70).

We find Mix's assertion that, by taking "up a defensive stance" in response to Mix's threats, Firefighter Small had "engaged in mutual combat" to be absurd. (Appellant's Br. p. 6). All witnesses testified to the same facts: Mix was irate and hit without provocation. Mix also argues that Firefighter Small's choice of words while testifying—that Mix "kept coming like he was going to come after me to fight *some more* . . . to engage me *some more*"—implies that "the two men were fighting one another." (Tr. p. 72 (emphasis added) (alteration in original); Appellant's Br. p. 7). We find this assertion equally unconvincing. Mix's unilateral pursuit of and swings at the Firefighters fall drastically short of being a mutual brawl. No reasonable person would find that Mix reasonably believed he was protecting himself from the Firefighter's "imminent use of unlawful force." I.C. § 35-41-3-2(i)(1). Therefore, we find the trial court acted within its discretion in rejecting the self-defense jury instruction.

## CONCLUSION

Based on the foregoing, we conclude that there is sufficient evidence to uphold Mix's conviction of domestic battery and battery, and the trial court did not abuse its discretion in declining to give a self-defense instruction to the jury.

Affirmed.

ROBB, C. J. and KIRSCH, J. concur